Luther G. POWER, Jr.

v.

The UNITED STATES.

No. 439–74.

United States Court of Claims.

March 17, 1976.

Philip E. McCleery, Waco, Tex., atty. of record, for plaintiff; Sheehy, Lovelace & Mayfield, Waco, Tex., of counsel.

Donnie Hoover, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and KUNZIG, Judge.

KUNZIG, Judge:

In this civilian pay case plaintiff, formerly employed as an Army Ammunition inspector, contests his dismissal seeking reinstatement and back pay. The Army removed Power because he allegedly submitted false information in connection with a claim for travel expense reimbursement. We find the dismissal penalty so out of proportion to plaintiff's proven conduct that it constitutes an abuse of discretion by defendant. Accordingly, plaintiff is entitled to recover back pay.

The instant case stems from plaintiff's April 1971 transfer from Fort Wingate Army Depot in New Mexico to Red River Army Depot (Red River) at Texarkana, Texas. On June 4, 1971, following his transfer, plaintiff submitted a claim for travel expenses at the Red River Finance and Accounting Office. This claim included requests for reimbursement of household goods cartage payments, temporary rent costs and meal expenses. It is undisputed that plaintiff did not personally fill out the claim voucher. Instead, pursuant to Red River practice, he provided supporting documents to Mrs. Mary A. Goodman, a clerk at the Red River Finance and Accounting Office. Mrs. Goodman "filled out" the voucher.

After its preparation, Mrs. Goodman gave the voucher and supporting documents to her supervisor who noted that certain "weight tickets" for the household goods cartage had apparently been altered. Believing that plaintiff had altered the documents in an attempt to defraud the Government, the supervisor triggered an investigation by the CID and the FBI into plaintiff's claim.

*One year later,* on July 17, 1972, the Army issued a notice of proposed removal. Defendant accused plaintiff of submitting false information in connection with the claims. The charges related to claims for (1) cartage, (2) rent, and (3) meals. Specifically, the Army contended that plaintiff had moved only 1280 pounds of household goods, but altered the weight tickets in an attempt to obtain reimbursement for 5200 pounds. Further, defendant accused Power of claiming $175 for temporary lodging in May 1971 when in fact he had paid only $125. Finally, the Army claimed that Power had attempted to collect for meals taken by his wife during the move although he was not entitled to such reimbursement.[1]

On September 18, 1972, the Army removed plaintiff on the basis of these charges.

During the course of subsequent administrative proceedings, various facts emerged. The Civil Service Commission (CSC) hearing examiner determined that defendant failed to prove any alteration of the weight tickets and *found for plaintiff on the substantial cartage charge.* However, he held that the rent claim contained an error of $50 and, further, that Power's request for reimbursement for his wife's meals was improper.[2] Concluding that plaintiff had sub-

---

1. Thus the rent error could be as much as $50. The record fails to show the amount plaintiff specifically spent for meals for his wife. Nor did defendant correct this deficiency. A fair estimate might be about $200.00. *See* note 4, *infra.*

2. Plaintiff had claimed reimbursement for meals taken by his wife at times when she was not specifically with him. Since under the examiner's interpretation of the regulations an employee may only obtain reimbursement for a dependent's meals when the dependent *accompanies* the spouse, the examiner concluded that Power had improperly attempted to obtain payment for certain of his wife's meals.

mitted false information in connection with the claims for rent and meals, the examiner upheld the Army's decision to remove plaintiff. The CSC Dallas Region appeals examiner and the CSC Board of Appeals and Review affirmed the hearing examiner.

Plaintiff subsequently brought the present action to contest the administrative determinations. He attacks his removal primarily on two levels. First, contends plaintiff, defendant failed to establish guilt based on the offenses charged. Second, even if the charges were substantiated, the penalty of dismissal was unduly harsh.

■ Given the unique facts of this case, we hold the penalty was so unconscionably disproportionate as to be an abuse of discretion by defendant. We therefore find for plaintiff.

Power's first attack, that defendant has not established guilt, must fail.

■ It is well settled that our review of administrative determinations is limited to a finding of substantial evidence supporting the decision. *Peters v. United States*, 408 F.2d 719, 187 Ct.Cl. 63 (1969); *Powers v. United States*, 169 Ct.Cl. 626 (1965); *Harrington v. United States*, 174 Ct.Cl. 1110 (1966); *Greenway v. United States*, 163 Ct.Cl. 72 (1963). In the instant case, there is sufficient evidence to uphold the administrative determination of guilt despite some doubts raised by various facts in the record. Thus plaintiff's removal cannot be upset based on defendant's alleged failure to prove guilt.

Plaintiff's second argument, that his penalty was too severe, stands on different footing.

The departure point for our inquiry into the propriety of plaintiff's penalty is an analysis of the standard for review. The administrative conclusions in this case were founded on the premise that removal was appropriate in view of the offenses alleged. Plaintiff contends otherwise.

■ As a general rule, a penalty for employee misconduct is a matter left to the discretion of the executive agency. *Birn-*

*holz v. United States*, 199 Ct.Cl. 532 (1972); *Cook v. United States*, 164 Ct.Cl. 438 (1964); *Dulcy v. United States*, 284 F.2d 687, 149 Ct.Cl. 153 (1960). However, in two situations courts will not uphold the punishment imposed by the agency. The first test for an invalid penalty is whether or not the sanction exceeds the range of permissible punishment specified by statute or regulation. *Daub v. United States*, 292 F.2d 895, 154 Ct.Cl. 434 (1961); *Cuiffo v. United States*, 137 F.Supp. 944, 950, 131 Ct.Cl. 60, 68 (1955). Under the second test, courts disapprove discipline which is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion by the agency.

> It is only where the transgression is so minor, and a discharge based thereon so 'unduly harsh and unwarranted, that the dismissal, could be considered as constituting an *abuse of discretion* * * * that demands redress by this court * * *.' [*Heffron v. United States*, 405 F.2d 1307, 1312, 186 Ct.Cl. 474, 484, (1969)]. (emphasis added).

Recently this philosophy was reaffirmed by Judge Skelton, speaking for the court in a situation similar to the case at bar.

> In any event, we agree with plaintiff that his discharge on Count I after 22 years of satisfactory government service was too harsh and out of all proportion to the offense charged. We have held that a dismissal under such circumstances is an abuse of discretion, is illegal, and demands redress by this court * * *. [*Jacobowitz v. United States*, 424 F.2d 555, 563, 191 Ct.Cl. 444, 458–59 (1970)].

The same test has been used in *Heffron v. United States*, 405 F.2d 1307, 1312–13, 186 Ct.Cl. 474, 485 (1969); *Liotta v. United States*, 174 Ct.Cl. 91 (1966), and *De Nigris v. United States*, 169 Ct.Cl. 619, 625 (1965).

■ The usual test for abuse of discretion in evaluating a penalty necessitates "a showing by plaintiff that the penalty is so harsh that there is an 'inherent disproportion between the offense and punishment.'" *Grover v. United States*, 200 Ct.Cl. 337, 353 (1973). Further, if an abuse of discretion is

demonstrated, the court will set aside the penalty even where it lies within the range of penalties permitted by statute or regulation. *Id.*

Having determined the standard of review, we turn to the facts presented in the instant case. Clearly, if plaintiff submitted false information in support of his claim for reimbursement, his dismissal was permitted by regulation.[3] If plaintiff is successfully to attack the validity of his dismissal, he must focus on the second standard discussed above: that it was an abuse of discretion for defendant to impose the maximum penalty permitted when he only committed a *de minimis* offense. We agree with plaintiff that such is the case in the instant fact situation.

At each of the administrative appeal levels, it was conclusively established that defendant failed to prove the accusations relating to alteration of weight tickets. The case for plaintiff's removal thus rested on the two remaining minor charges: the rent discrepancy and the meals complaint.

It can be argued that the voucher was in error because plaintiff paid only $125 for rent in May 1971 rather than the $175 listed on the rental receipt. However, plaintiff's submissions through Mrs. Goodman, the Red River clerk, were valid in a manner of speaking. He *had* paid out $175 for rent, but apparently $50 of the payment was for a returnable deposit. Yet plaintiff was required to submit covering receipts, and the $175 receipt was the only proof he had. Whether or not plaintiff was only entitled to a $125 reimbursement, the fact remains there is no evidence in the record pertaining to his motives for submitting the $175 receipt. We cannot tell from the record if plaintiff acted accidentally, willfully or in any way fraudulently. Thus, the entire $50 incident remains somewhat in doubt.

It can also be argued that plaintiff claimed reimbursement for some meals taken by his wife during May 1971 for which he was technically not entitled to reimbursement. The hearing examiner interpreted the applicable regulations to the effect that an employee may only claim meal expense incurred by a dependent if the dependent travels with the employee. *See* note 2, *supra.* In the instant case, plaintiff's wife remained in Waco, Texas, during the month in question and only joined her husband on weekends. It thus appears that Power's claim for meals for his wife's entire month's meal expenses included amounts to which he was not entitled. Again, there is a paucity of evidence in the record as to whether Power submitted the erroneous meal claims willingly and knowingly. It is not clear whether plaintiff understood the interpretation at the time he submitted his claim. The record does not indicate that the Red River clerk or anyone else ever explained it to plaintiff. Again, there is doubt whether plaintiff *knew* he may have "padded" his reimbursement claim.

Moreover, the *de minimus* nature of the rent and meal discrepancies casts even more doubt on any possible "willfulness" on plaintiff's part. Defendant caught the discrepancies in its investigation process. *Plaintiff was never paid the extra amounts.* In any event plaintiff could never have received the $50 "extra." He was entitled to a maximum reimbursement of $677.08 for rent and meals during his move. Plaintiff's reimbursable rent and meal expenses *other* than the $50 amounted to significantly more than this maximum. Therefore, at no time did the $50 error ever portend a loss to the Government. Against this background, it becomes even more difficult to believe Power submitted the erroneous rent claim willfully.

Plaintiff's claim for his wife's meal expenses becomes similarly *de minimis.* Once again, we cannot determine from the facts in the record precisely how much plaintiff improperly claimed for his wife's meals. We can, for purposes of evaluating the seri-

---

**3.** IR 690–3(730), App. VII, Figure 1: Table of Standard Penalties. For "false statements, misrepresentation or fraud of a substantial nature * * * in the matter of * * * entitlements in official records" the minimum penalty is a ten-day suspension; the maximum penalty, removal.

ousness of plaintiff's alleged misconduct, derive an estimate of his wife's meals claim.[4] Again, it would appear that any excessive meal claims made by plaintiff were minor.[5]

In short, the cumulative doubts expressed above suggest that the maximum penalty imposed on plaintiff is clearly too harsh and out of all proportion.

■ The doubt becomes even more significant given other key facts in this case. Defendant delayed *over a year* in bringing the charges against plaintiff. During this time, it "fine tooth combed" plaintiff's submissions. While we cannot say that the delay in and of itself "taints" the present proceedings against plaintiff, it certainly is a factor which should have been considered at the time defendant imposed the penalty.

Even more serious is the defendant's manner of proceeding in the present case. Defendant joined two relatively minor charges (rent and meals) with a serious and significant accusation (the cartage alteration). After failing to sustain the serious charge, the Government continued to advocate dismissal on the basis of the two relatively insignificant charges. Perhaps defendant really wanted to remove plaintiff for the serious offense, but when it found that the facts would not so allow, it achieved the same result by use of the two *de minimis* allegations. In other words, plaintiff's punishment for the two minor offenses might well have been based upon defendant's unsupported, continuing belief that he was guilty of the serious offense. Although defendant's motive for its manner of proceeding is not readily provable, certainly the specific facts of the case at bar raise substantial questions.

In *Jacobowitz, supra,* we were confronted with a similar problem. There, an IRS agent was removed on three charges: (1) negligent failure to process taxpayers' checks; (2) falsification of time sheets; and (3) failure to make efficient use of his time. The IRS itself dropped charge number (3), but continued to press for dismissal on the other two. We found insufficient evidence in the record to support the serious charge (falsification of records) and concluded that discharge on the *de minimis* remaining charge (negligent failure to process checks) was "too harsh and all out of proportion with the offense charged." *Id.,* 424 F.2d at 563, 191 Ct.Cl. at 458–59. The instant situation is equivalent or even worse, since the strong charge was already rejected below.

■ Finally, defendant brings forth one last argument. It attempts to justify plaintiff's removal as necessary to deter other expense account "padders." At oral argument, defense counsel stated that the Government seeks to "make an example" of Power. We have no quarrel with defendant's goal. Deterrence can be an effective method of preventing fraud upon the Government. However, at some point an unduly harsh penalty can effectively ruin defendant's goal of deterrence. Such a point has been reached here. Moreover, if the penalty is so harsh as to constitute an abuse, rather than an exercise of discretion, it cannot be allowed to stand. *Clark, supra; Jacobowitz, supra.* Even for a reason otherwise "virtuous." Plaintiff's conduct in no way justified removal. "The punishment does not fit the crime."

In summary, we are confronted with a case in which the penalty is so unconscionably disproportionate that it becomes an abuse of discretion. A plaintiff with an unblemished record of twenty-five years of Government service has been removed for submitting allegedly false information in

---

4. Plaintiff claimed $620.04 for meals for himself and his wife. If we assume that the meal costs were fairly equal for both the wife's May 1971 meals cost $310.02. If she spent weekends and holidays with plaintiff, she would have spent roughly one-third of May with him. Power could have claimed $103.34 for her meals. His actual claim would then be excessive by some $206.68.

5. Plaintiff's actual claim ($867.29) was $190.21 over his maximum allowable reimbursement under the law ($677.08). If the excessive claim for the wife was $206.68, the *meal error* could only have cost defendant *$16.47* in actual dollars lost. The *rent and meal errors* combined, thus would have totaled *$66.47*.

connection with claims for travel expense reimbursement. Defendant failed to substantiate a serious charge of alteration of weight tickets, but continued to advocate dismissal based on two minor discrepancies. There is some doubt whether plaintiff actually filed *false* information, and there is even greater doubt that plaintiff submitted the *de minimis* claims *knowingly, intentionally* and with the purpose to defraud the Government. The year's delay in bringing about plaintiff's removal poses yet another question concerning the fairness of the overly harsh penalty. Finally, defendant wishes to deter others from "padding" their expense accounts, but we doubt that "throwing the book" at plaintiff would have the desired effect.

We reemphasize that this suit is unique because of its peculiar facts. The general rule remains that the penalty imposed by the agency will be viewed as a matter within agency discretion unless such discretion is abused. Such discretion has been abused in the case at bar.

Accordingly, defendant's motion for summary judgment is denied and plaintiff's cross-motion is granted. Having carefully considered plaintiff's prayer for judgment, defendant's answer thereto, briefs, oral argument and the reinstatement power vested in us under Pub.L. 92–415, we have determined *not* to order reinstatement in this action in the light of the unusual nature of this case. Judgment is therefore entered for plaintiff, and the cause is remanded to the Trial Division for further proceedings under Rule 131(c) to determine the amount to be awarded plaintiff, consistent with 'this opinion.