**Luther G. POWER, Jr.**

v.

**The UNITED STATES.**

No. 439–74.

United States Court of Claims.

April 18, 1979.

Philip E. McCleery, Waco, Tex., attorney of record, for plaintiff. Sheehy, Lovelace & Mayfield, Waco, Tex., of counsel.

Donnie Hoover, Washington, D.C., with whom was Asst. Atty. Gen., Barbara Allen Babcock, Washington, D.C., for defendant.

Before DAVIS, KASHIWA and SMITH, Judges.

## OPINION

PER CURIAM: *

This is a Rule 131(c) proceeding to determine the amount of the plaintiff's recovery under the court's decision of March 17, 1976, *Power v. United States*, 531 F.2d 505, 209 Ct.Cl. 126, which held that the defendant was liable to the plaintiff and remanded the case to the trial division for a determination of the amount of the plaintiff's recovery.

### Employment

The plaintiff was formerly a civilian employee of the Department of the Army in the competitive civil service. After successfully completing a 2-year period of training at the AMC Ammunition School, Savanna Army Depot, Savanna, Illinois, the plaintiff was promoted from GS–7 to GS–9, step 1, effective February 2, 1970, and was assigned to a position as an ammunition inspector (surveillance) at the Fort Wingate Army Depot, Gallup, New Mexico. At Fort Wingate, the plaintiff was advanced to step 2 in grade GS–9 effective December 27, 1970; and then, because of superior service, he received an advancement to step 3 in grade GS–9 on January 10, 1971.

On April 9, 1971, the plaintiff was transferred from the Fort Wingate Army Depot

---

* Except for the section on "Termination of Right to Pay," this opinion incorporates the opinion of Trial Judge Mastin G. White, with minor modifications.

The necessary findings of fact are contained in this opinion and the earlier opinion, and in the appended supplementary findings.

in New Mexico to the Red River Army Depot, Texarkana, Texas. In connection with this transfer, the plaintiff was entitled to certain travel allowances for the transportation and subsistence of himself and his dependents, and for the shipment of his household goods and personal effects. Claims for such allowances were subsequently submitted by the plaintiff.

While serving at the Red River Army Depot, the plaintiff was advanced to step 4 in grade GS–9 effective January 9, 1972.

### Removal

On September 18, 1972, the plaintiff was involuntarily removed from his position at the Red River Army Depot. The removal was based upon charges which, as ultimately upheld by the Board of Appeals and Review of the Civil Service Commission at the end of a series of administrative appeals by the plaintiff, alleged that the plaintiff, in submitting a voucher for reimbursement of expenses incurred as a result of his transfer from the Fort Wingate Army Depot in New Mexico to the Red River Army Depot in Texas, had submitted a false document indicating the expenditure of $175 for temporary lodging, when in fact this expenditure was in the amount of only $125, and that he had submitted false documentation indicating expenditures for meals supposedly eaten by his wife during the move, although in fact the plaintiff's wife did not accompany him on the move from New Mexico to Texas.

### Judicial Proceedings

Having exhausted the administrative remedies available to him in connection with his involuntary separation from the government service, the plaintiff instituted the present action in this court on December 23, 1974. In the petition, the plaintiff asked for a judgment for back pay from September 18, 1972, and for reinstatement in the position from which he was involuntarily removed.

On May 27, 1975, the defendant filed a motion for summary judgment; and the plaintiff thereafter filed a cross-motion for summary judgment on June 30, 1975.

On March 17, 1976, the court rendered a decision denying the defendant's motion for summary judgment, granting the plaintiff's cross-motion, entering judgment for the plaintiff on the issue of liability, and remanding the case to the trial division for a determination of the amount of the plaintiff's recovery under Rule 131(c). *Power v. United States*, 531 F.2d 505, 209 Ct.Cl. 126. The court held that the penalty of dismissal which the Department of the Army, with the subsequent approval of the Civil Service Commission, assessed against the plaintiff "was so unconscionably disproportionate as to be an abuse of discretion by defendant." *Id.* 531 F.2d at 507, 209 Ct.Cl. at 129. The court said that the plaintiff was entitled to recover back pay, but that it had "determined *not* to order reinstatement in this action in the light of the unusual nature of this case" (emphasis in original). *Id.* 531 F.2d at 510, 209 Ct.Cl. at 135.

On May 5, 1976, the defendant filed a motion for rehearing in the case. This motion was denied by the court in an order dated June 25, 1976. 210 Ct.Cl. 742.

Over a period of months, the parties attempted, through negotiations, to reach an agreement on the amount due the plaintiff under the court's decision of March 17, 1976. Such negotiations ultimately proved to be unsuccessful; and, after the parties had engaged in discovery procedures, a trial on the issue of damages was held in Waco, Texas, on November 14, 1977. The customary post-trial procedures by the parties under the rules of the court were conducted thereafter.

### Termination of Right to Pay

■ One of the questions to be decided in the present proceeding under Rule 131(c) relates to the termination date of the plaintiff's right to receive pay under the court's decision of March 17, 1976.

With respect to this question, the defendant contends that the plaintiff's right to receive pay terminated on the date of the court's decision, *i. e.*, on March 17, 1976.

The plaintiff, on the other hand, contends that he is entitled to receive pay through November 14, 1977, *i. e.*, the date of the trial on the issue of damages under Rule 131(c).

The trial judge opted for March 17, 1976, but the court rejects both of the dates urged by the parties and holds that the termination of plaintiff's right to receive pay occurred in this case on June 25, 1976, when the Government's motion for rehearing was denied in a "speaking" order. That order declared in pertinent part:

> In denying rehearing *en banc* the court emphasizes that it deems that plaintiff, in his opposition to the defendant's petition for rehearing *en banc* and for rehearing, has rejected the position that he had to be reinstated, and the court concludes that he is content with the relief he has been accorded. In that situation reinstatement is certainly not mandatory, just as it would not be if plaintiff had failed to ask for reinstatement in his petition [See Rule 35(g)] or other papers. If defendant remains fearful that, despite plaintiff's position on the rehearing petition, he will be able to recover back-pay indefinitely, it can always reinstate him voluntarily. The court's decision [reported at 531 F.2d 505, 209 Ct.Cl. 126 (1976)] does not preclude such action by the Government. (*Power v. United States*, 210 Ct.Cl. 742, 743)

Plaintiff never challenged that statement nor sought rehearing or modification of it.

We construe the statement in the June 25, 1976 order as a holding by the court that plaintiff, by his position and conduct with respect to the defendant's rehearing motion, had waived all claim to further back pay (as well as to reinstatement). The court did not, at that time, consider that plaintiff could recover further back pay even though he affirmatively rejected reinstatement. If plaintiff believed that he could,[1] he should have sought clarification or change in the order of June 25, 1976.

The parties have stipulated that, if the termination date is June 25, 1976 (as we hold), plaintiff is entitled to back pay of $59,199.36 (including a retirement deduction of $3,710.06 and a lump-sum for annual leave of $6,169.28).[2]

## Level of Pay

The plaintiff argues that the computation of back pay should take into account a promotion of the plaintiff from grade GS–9 to grade GS–11 as of October 1, 1972, and subsequent step increases in grade GS–11 on October 14, 1973, October 14, 1974, and October 12, 1975. The argument on this issue is based upon the plaintiff's testimony in the record to the effect that at about the time of his transfer from the Fort Wingate Army Depot to the Red River Army Depot, he was informed by his superiors (not identified by name) that he was slated for a subsequent transfer overseas; that at the time in question, a number of ammunition inspectors were being transferred by the Department of the Army to the Far East, principally to Vietnam; and that he was told such a transfer resulted in a promotion from GS–9 to GS–11 in accordance with a then-current Department of the Army policy designed to encourage service in the Far East (although the policy was not incorporated in a statute or regulation).

In the absence of conflicting evidence, the plaintiff's testimony, together with the excellent record that he had made in the performance of his duties as an ammunition inspector, warrants the inference that if the plaintiff had continued in the service after September 18, 1972, he might well have been transferred to the Far East within a reasonable period of time and, in connection with such transfer, might well have received a promotion from grade GS–9 to grade GS–11.

---

1. At the oral argument on the present phase of the case, plaintiff's counsel asserted the right to recover back-pay (in a new suit or suits) indefinitely or at least up to retirement age.

2. The computation assumes that plaintiff would have remanded in Grade GS–9 but would have advanced to step 5 of GS–9 on January 6, 1974, and to step 6 on January 4, 1976.

The possibility or mere probability of promotion, however, is not sufficient for this factor to receive consideration in connection with a determination as to the level of pay on which the plaintiff's recovery is to be computed.

■ There are numerous decisions by this court announcing the general rule that a civilian employee of the Government, or a member of the Armed Forces, is entitled only to the rights and salary of the position to which such person has been administratively appointed. *E. g., Bielec v. United States*, 456 F.2d 690, 696, 197 Ct.Cl. 550, 560 (1972); *Peters v. United States*, 534 F.2d 232, 234, 208 Ct.Cl. 373, 377 (1975). In order to recover on the basis of the salary of a higher position than that to which a claimant has actually been appointed, the claimant must normally show a legal entitlement to the pay of the higher position. *Selman v. United States*, 498 F.2d 1354, 1358, 204 Ct.Cl. 675, 684 (1974); *Doggett v. United States*, 207 Ct.Cl. 478, 482 (1975). Possibly the Federal Personnel Manual Supplement 990–2 may qualify this requirement somewhat when it provides for back pay on the basis of a higher grade if it is "clearly established" that the promotion would have occurred but for the improper personnel action.[3]

■ The plaintiff in the present case does not contend that the Department of the Army would have been under a mandatory duty to promote him to grade GS–11 as of October 1, 1972—or any other time—if he had continued in the service after September 18, 1972. Nor is it "clearly established" that he would have been promoted. His claim to the salary of the higher grade is based only upon hope, and perhaps reasonable expectation. Consequently, under all the authorities, this claim must be rejected.

It follows, therefore, that the amount of the plaintiff's entitlement to back pay is $59,199.36, based upon the salary of the position to which he had been administratively appointed and which he was occupying at the time of his involuntary separation from the service, as affected by the step increases that he would have received between the date of his separation from the government service and the date of the court's decision.

### Expenses

The plaintiff claims—and the defendant concedes—that the plaintiff is entitled to recover in the present action:

(1) reimbursement in the amount of $378.00 for travel expenses incurred by the plaintiff in connection with the prosecution of his appeals at the administrative level from the adverse action that was taken against him by the Department of the Army; and

(2) reimbursement in the amount of $1,635.08 as the allowable travel expenses incurred by the plaintiff in connection with his move from the Fort Wingate Army Depot to the Red River Army Depot in 1971.

The plaintiff also asserts a claim—which the defendant opposes—for reimbursement in the amount of $257.08 to cover travel expenses which the plaintiff's attorney incurred, and which the plaintiff defrayed, on a trip from Waco, Texas, to Washington, D.C., and returned in connection with the successful conduct of the present litigation.

The plaintiff's argument in support of this claim is based upon the portion of the Federal Personnel Manual Supplement 990–2, Book 550, Subchapter 8, Section 8–6(11), which provides for the payment of a government employee's travel expenses incurred in successfully prosecuting an administrative appeal from an adverse administrative action. Although the Federal Personnel Manual does not refer to travel expenses incurred by such an employee's attorney, the plaintiff states in his brief that

---

**3.** The Manual provides for such back pay "if it is clearly established by appropriate authority that, under applicable law, Executive order, regulation, or collective bargaining agreement, the employee would have been selected for the promotion, *but for* the unjustified or unwarranted personnel action." Federal Personnel Manual Supp. 990–2, Book 550, Subch. 8, § 8–4(b)(2) (1977) (emphasis in original).

"Clearly Plaintiff is entitled to be represented in the Court of Claims by counsel and counsel's expenses are made necessary for the successful prosecution of Plaintiff's appeal," and that the plaintiff "should be entitled to recover this amount."

█ This court, in rendering judgment for a claimant in a case involving the taking of property by a government agency, is authorized by 42 U.S.C. § 4654(c) (1976) to include an amount for reasonable litigation expenses incurred by the claimant in prosecuting the case. The court, however, is not authorized to make an award for litigation expenses incurred by a claimant in successfully prosecuting a civilian pay case, such as the present one.

Accordingly, the plaintiff's claim in the amount of $257.08, relating to litigation expenses, must be rejected.

### Offset

The defendant contends that it is entitled to an offset against the amount awarded to the plaintiff, because (according to the defendant) the plaintiff failed to mitigate damages by making a reasonable effort to obtain other employment after his involuntary separation from the government service.

In support of this argument, the defendant refers to the Back Pay Act, 5 U.S.C. § 5596 (1976), which provides in part that a government employee who is found to have undergone an unjustified or unwarranted personnel action, which has resulted in the withdrawal or reduction of all or a part of his pay, is entitled, on correction of the personnel action:

 * * * to receive for the period for which the personnel action was in effect an amount equal to all or any part of the pay * * * that the employee normally would have earned during that period if the personnel action had not occurred, *less any amounts earned by him through other employment during that period* * * *. 5 U.S.C. § 5596(b)(1) (1976) (emphasis added).

The evidence in the record shows that the plaintiff did not have any earnings through other employment during the period between the date of his involuntary separation from the government service and the date of the court's decision or the date of the denial of rehearing. His entire income during that period consisted of his retirement pay from the Navy. (The plaintiff retired from the Navy as a Chief Petty Officer, E–7, in 1970, after serving on active naval duty from 1939 until 1960 and then remaining in the Fleet Reserve from 1960 to 1970.)

Although the portion of the Back Pay Act previously quoted refers only to the deductions of "any amounts earned * * through other employment" during a period when the pay of a government employee has been improperly withdrawn or reduced, the defendant cites this court's decision in *Schwartz v. United States*, 181 F.Supp. 408, 149 Ct.Cl. 145 (1960), which construed a statutory provision similar to the current Back Pay Act. In that decision, the court said (among other things) that:

 * * * the clearest implication that can possibly be drawn from the language used, is that it was contemplated that the claimant would make a reasonable effort to secure other employment and that the amount which the claimant earned, *or with reasonable effort might have earned*, be deducted from the total amount of compensation that would otherwise be paid under the statute. * * 181 F.Supp. at 410, 149 Ct.Cl. at 147 (emphasis supplied).

The defendant argues that the plaintiff in the present case, with reasonable effort, could have obtained employment paying at least the applicable minimum wage, and thus could have earned at least $9,908.80 during the period beginning 1 year after the date of his involuntary separation from the government service and extending through the date of the court's decision holding that his removal from his position was unlawful; and that this sum should be offset against the amount which the plaintiff would otherwise be entitled to recover in the present action.

The defendant, in explaining its concession that it is not entitled to any offset because of the plaintiff's failure to seek other employment during the 1-year period immediately following his separation from the government service, quotes from a regulation of the Civil Service Commission, 5 C.F.R. § 550.804(f) (1977), which stated in part as follows:

(f) In computing the amount of back pay due an employee under * * * [the Back Pay Act], if the employee has been restored within 1 year after his erroneous separation, the agency may not delete any period from computation on the basis that the employee was under obligation to make an effort to secure other employment during the period covered by the unjustified or unwarranted personnel action.[4]

It seems to be the defendant's view that the quoted regulation, by necessary implication, gives the defendant a right of offset after the expiration of the 1-year period immediately following the plaintiff's separation from the government service, because of the plaintiff's subsequent failure to make a reasonably diligent effort (in the defendant's opinion) to obtain other employment. This view that the plaintiff was under an obligation to begin to seek other employment immediately after the expiration of an arbitrarily fixed 1-year period following his separation from the government service should not be accepted, in our opinion. Rather, the plaintiff's specific situation should be taken into account.

 In September 1973, at the end of the 1-year period following his removal from his position with the Department of the Army, the plaintiff was awaiting, and preparing for, a hearing before a representative of the Dallas Regional Office of the Civil Service Commission on the plaintiff's initial appeal to the Commission. Furthermore, he was entitled to appeal to the Board of Appeals and Review of the Commission if the decision of the Dallas Regional Office should turn out to be adverse to him. Under the circumstances, it would be unfair to hold that the plaintiff was under an obligation at that time to begin a diligent effort to obtain other employment, when he was pursuing his administrative remedies in an effort to overturn the action of the Department of the Army.

Under the portion of this court's decision in the *Schwartz* case, *supra*, dealing with the question of when the obligation of the claimant in that case to seek other employment began, 181 F.Supp. at 410, 149 Ct.Cl. at 148, the proper view seems to be that a government employee who has been improperly removed from his position is not required to seek other employment while appellate administrative proceedings are in progress and the employee is endeavoring to obtain reinstatement; but that the obligation to seek other employment does arise when the adverse action removing him from his position becomes final at the administrative level. In the present case, the plaintiff's removal from his position actually did not become final until the Board of Appeals and Review of the Civil Service Commission rendered the final administrative decision on April 5, 1974, upholding the plaintiff's removal and finally concluding the series of administrative appeals to which the plaintiff was entitled.

Consequently, the defendant is not properly entitled to any reduction in the award to the plaintiff because of his failure (if any) to make a diligent effort to obtain other employment during the period from the date of his involuntary separation from the government service and the date (April 5, 1974) when his efforts at the administrative level to obtain reinstatement came to an end with the final decision of the Board

4. This regulation was amended effective March 25, 1977. The amended regulation does not contain any one-year exclusion of setoffs for other employment; it merely states that "* * * the agency shall deduct the amounts earned by the employee from other employment during the period covered by the correct-

ed personnel action." 41 *Fed.Reg.* 16,127, 16,-128 (1977), *codified in* 5 C.F.R. § 550.804(e) (1978). Because defendant has not actively contested before this court the beginning date for computation of the offset, *see* note 5, *infra*, we have no occasion to consider the impact, if any, of the amended regulation.

of Appeals and Review of the Civil Service Commission. Perhaps it should be stated at this point that, during the period just mentioned, the plaintiff devoted much of his time, efforts, and thoughts to the endeavor to obtain reinstatement in the position from which he had been improperly removed.[5]

A different situation obtains, however, with respect to the period beginning April 6, 1974, and extending through June 25, 1976, the date of the Court's denial of rehearing. The plaintiff's removal had become final at this time; and the evidence indicates clearly that the plaintiff did not make a reasonably diligent effort to obtain other employment.

The supplementary findings of fact relate in some detail the rather half-hearted efforts that the plaintiff made to obtain other employment after he was removed from his position by the Department of the Army on September 18, 1972. Insofar as such efforts can be definitely fixed as to time, they occurred during the period while the plaintiff's appeals at the administrative level were still in progress and while the plaintiff was still hoping and expecting to obtain reinstatement in his position—*i. e.*, during the period when the plaintiff actually was not under an obligation to seek other employment. As for the period after April 5, 1974, when the plaintiff's removal from his position became final, there is no clear evidence in the record that the plaintiff made any effort whatever to obtain other employment. Presumably, his retirement pay from the Navy and the earnings of his wife, who was working, were deemed adequate to meet the family's financial needs.

During the period which began on April 6, 1974, and extended through June 25, 1976, the plaintiff's age was in the 52–54 range; he was physically and mentally capable of working; he was a competent person; he was an experienced aviation mechanic (having performed that type of work during his last 12 years of active naval duty); and he was experienced in the field of ammunition and explosives by virtue of his work for the Department of the Army. It is only reasonable to infer, and to find, that if the plaintiff had made a reasonably diligent effort to obtain employment, he could have found work at wages that would have been at least équal to the applicable minimum wage at the time, in view of the plaintiff's age, experience, and competency. It is our view, therefore, that the defendant is entitled to offset, against the award otherwise due the plaintiff, the sum of $9,284.00, representing the amount that the plaintiff could have earned by seeking and obtaining employment at the applicable minimum wage during the period that began on April 6, 1974 (the day after his removal from the government service became final) and extended through June 25, 1976 (the date of the court's denial of rehearing.) [6]

### Conclusion

The plaintiff is entitled to a judgment in the net amount of $51,928.44, consisting of $59,199.36 (including $3,710.06 for retirement) for back pay, $378.00 as reimbursement for travel expenses incurred by the plaintiff in connection with the prosecution administratively of his adverse-action appeals, and $1,635.08 as reimbursement for allowable travel expenses incurred by the plaintiff during his move from the Fort Wingate Army Depot in New Mexico to the Red River Army Depot in Texas, less an offset of $9,284.00 to which the defendant is entitled.

### SUPPLEMENTARY FINDINGS OF FACT

The court makes the following supplementary findings of fact:

1. (a) In September 1972, shortly after he was removed from his position at the Red River Army Depot, the plaintiff sub-

---

5. Before the judges, defendant did not contest the trial judge's conclusion that no offset was allowable for the period prior to April 6, 1974.

6. The figure of $9,284.00 is derived from a stipulation of the parties (with a slight correction in plaintiff's favor for a legal holiday which would not have been worked).

mitted an application for employment to the Texarkana, Texas, branch office of the Texas State Employment Commission. At the time, he was not offered a position by that office.

(b) When he moved from Texarkana to Waco, Texas, the plaintiff informed the Texarkana branch office of the Texas State Employment Commission regarding his change of address. However, he never heard anything from the Texarkana branch office, and he did not communicate with that branch office again.

2. There is a branch office of the Texas State Employment Commission located in Waco, Texas, where the plaintiff has been living since the fall of 1972. The plaintiff did not at any time, however, confer with the Waco branch office regarding the possibility of obtaining employment.

3. In McGregor, Texas, a town that is located fairly close to Waco, Texas, there is a plant of the Rocketdyne Company that makes rockets (among other things), mainly under government contracts. Sometime in 1973, the plaintiff went to the Rocketdyne plant and spoke to the Personnel Director about the possibility of obtaining employment, but the company was not doing any hiring at that time. During the course of the interview, the plaintiff told the Personnel Director about his Army job, and stated that he expected to be reinstated at any time. The Personnel Director indicated that the matter of the plaintiff's reinstatement in his Army job ought to be resolved before the plaintiff submitted a formal application to Rocketdyne.

4. On one occasion, the plaintiff interviewed the owner of an apartment house (presumably located in Waco, Texas) about a job as apartment house manager. When the plaintiff, in order to be forthright, informed the man that he was awaiting reinstatement in his Army job, the man indicated that he was not interested in employing the plaintiff because of the uncertainty as to the length of the plaintiff's tenure, if employed.

5. The plaintiff (at a time not disclosed by the record) submitted applications to the District Offices of the Civil Service Commission in Houston, Texas, and in Dallas, Texas, for a mid-level position. However, he was never offered a position.

## CONCLUSION OF LAW

On the court's decision of March 17, 1976 (531 F.2d 505, 209 Ct.Cl. 126), the order of June 25, 1976, denying rehearing (210 Ct.Cl. 742), the supplementary findings, and the foregoing opinion, the court concludes as a matter of law that the plaintiff is entitled to recover the net sum of fifty-one thousand nine hundred and twenty-eight dollars and forty-four cents ($51,928.44), which includes a retirement deduction of $3,710.06 to be credited to plaintiff, and judgment is entered for the plaintiff in that amount.