**John R. JOYCE**

v.

**The UNITED STATES.**

**No. 206–81C.**

United States Claims Court.

Jan. 27, 1986.

Stephen M. Joyce, Beverly Hills, Cal., for plaintiff.

Sara V. Greenberg and Charles R. Gross, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

OPINION

MARGOLIS, Judge.

The plaintiff, John R. Joyce, brought this action to recover back pay and to set aside a decision of the Civil Service Commission (CSC), which sustained his removal from government employment. This court remanded the case to the successor of the CSC, the Merit Systems Protection Board (MSPB), so that the plaintiff could introduce testimony excluded by the CSC. *Joyce v. United States*, 2 Cl.Ct. 226 (1983). The MSPB has heard the testimony and returned the case. Both parties have renewed their motions for summary judgment. After hearing oral argument and considering the entire record, the court grants the plaintiff's motion and denies the defendant's motion.

FACTS

On July 29, 1974 the Veterans Administration (VA) hired the plaintiff as a Contact Representative and assigned him to Ohlone College in Fremont, California. One of his duties was to explain the VA educational benefits program to veterans on campus. The plaintiff was receiving VA educational benefits himself, and studied economics in a master's degree program at the California State University in Hayward.

In May of 1975 the VA assigned the plaintiff to Fresno City College in Fresno, California. The plaintiff then transferred his course of studies to the Fresno campus of the California State University (CSUF). The VA sent the plaintiff payment in advance for the fall semester of 1975, but the agency later learned that the plaintiff had enrolled in a baccalaureate program in drama instead of a graduate program in economics. Because two courses in economics were cancelled, the plaintiff had switched to the drama program. Soon after enrolling at CSUF the plaintiff dropped his drama courses, but failed to notify the VA through the proper channels or to return the payments he had received for the fall semester.

On January 19, 1976 the Veterans Service Officer, Charles R. Fikejs, sent the plaintiff a letter of proposed removal. The letter alleged that the plaintiff: changed his program of studies without required VA counseling and approval; registered for a class schedule that conflicted with his working hours; failed to attend classes or to notify the VA that he had dropped the classes; and continued to receive educational benefits even though he should have known that he was not entitled to them.

The plaintiff replied orally and in writing to the Deciding Official, R.F. Welch, on February 17 and 18, 1976. On February 24, 1976 the plaintiff submitted more written material, including a personal check to the VA for $350.20. On March 16, 1976 Mr. Fikejs sent the Deciding Official a memorandum and exhibits rebutting the plaintiff's submissions (Fikejs memo). On March 30, 1976 the Deciding Official sustained all the allegations listed in the letter of proposed removal.

The plaintiff appealed to the Civil Service Commission, which held a *de novo* hearing on July 6, 1976. On December 6, 1976 the Appeals Officer found that a preponderance of the evidence supported six of the nine paragraphs of allegations in the letter of proposed removal, and held that the removal was "based on the sustained charges [and] was taken for such cause as would promote the efficiency of the service."

The plaintiff submitted a request for reconsideration to the CSC Appeals Review Board. Its successor, the MSPB Office of Appeals Review, denied the request on April 18, 1979. On April 21, 1980 the plaintiff filed a complaint with the U.S. District Court for the Eastern District of California, which transferred the case to the U.S. Court of Claims on March 26, 1981.

## DISCUSSION

### A. *Procedure*

In both his original and his renewed motions the plaintiff argues that submission of the *ex parte* Fikejs memo to the Deciding Official tainted the removal procedure, deprived the plaintiff of due process, and requires his reinstatement. He cites *Camero v. United States*, 179 Ct.Cl. 520, 527, 375 F.2d 777, 780–81 (1967) (Army Regulations implicitly forbade representative of removing agency to communicate his recommendation privately to decision makers in adversary hearing.).

The court rejects this argument. The Deciding Official held no hearing. He sought the plaintiff's views and could also consider "internal documents of an advisory nature" submitted by the agency. *See Della Valle v. United States*, 231 Ct.Cl. 818, 821 (1982). No VA regulation prohibited such *ex parte* communications with the Deciding Official. *See generally Welcker v. United States*, 752 F.2d 1577, 1582–83 (Fed.Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985). (*Ex parte* communications prejudicial only if precluded by statute, regulation, or agency practice.). "In *Joyce* the writer of the memo was not shown to be an adversary of the plaintiff," as the Court of Appeals for the Federal Circuit has noted. *Sullivan v. Department of the Navy*, 720 F.2d 1266, 1273 (Fed.Cir.1983).

■ In sum, the plaintiff had adequate written notice of the charges against him and an opportunity to respond. He has failed to show that an adversary drafted the Fikejs memo and that the VA violated regulations by submitting it to the Deciding Official. This is not the kind of *ex parte* communication that the court finds offensive to due process. *See Della Valle*, 231 Ct.Cl. at 821.

### B. *The Merits*

■ This court limits its review of administrative decisions to a determination of whether substantial evidence supports them. *E.g., Boyce v. United States*, 211 Ct.Cl. 57, 60, 543 F.2d 1290, 1292 (1976). In this case, at least some evidence supports the CSC's finding that the plaintiff "was fully aware of [VA educational program] requirements by virtue of his posi-

tion with the agency[,] ... did not inform the VA of his non-attendance and consequential non-entitlement to educational funds[,] or return those funds in a timely manner...." The CSC also affirmed the penalty of dismissal from government service.

■ Executive agencies have wide discretion to punish their employees for misconduct. However, if the punishment exceeds the range of sanctions permitted by statute or regulation, or if the penalty is so harsh that it amounts to an abuse of discretion, this court will not permit it to stand. *Boyce*, 211 Ct.Cl. at 61, 543 F.2d at 1292 (citing cases).

Cases reversing agency-imposed penalties have emphasized the importance of the employee's intent. *Cully v. United States*, 221 Ct.Cl. 967, 968 (1979). If the evidence supporting guilt is slim, the court may doubt if the employee violated agency policies knowingly and wilfully. *See Boyce*, 211 Ct.Cl. at 61, 543 F.2d at 1292. If the violation was not wilful, "such inadvertent conduct should be reflected in the penalty imposed." *Id.* at 63, 543 F.2d at 1293; *see also Douglas v. Veterans Administration*, 5 MSPB 313, 332, 5 M.S.P.R. 280 (1981) (factors considered by MSPB when mitigating agency-imposed penalty).

■ The VA removed the plaintiff for violating agency policy, but the record shows that he either acted in ignorance or followed procedures that his co-workers and superiors recommended.

### 1. *VA Procedures: Actual and Ideal*

At the CSC hearing Joseph DiMeo, a VA official, could not specify which changes in an educational program required counseling. He admitted, "It's a complicated question. It's not easily resolved unless it's obviously coming like from an O.J.T. [on-the-job training] to an academic." CSC Hearing Tr. 129. The question also confused the Contact Representatives. VA regulations also provided that a veteran could change to a new program without

counseling if he had made satisfactory progress in the previous program.

When veterans dropped classes, the instructors reported the absences to school authorities, who notified the VA. "[I]t's not necessary for the veteran to go to the vet-rep." Tr. 118 (DiMeo). DiMeo admitted that veterans usually relied on the school to report dropped classes to the VA. The Appeals Officer asked if the VA's requirement of direct notification was honored more in the breach. DiMeo answered, "Yeah, it is honored more in the breech [sic], but nevertheless every veteran is reminded of his responsibility and obligation to report any change that is going to effect [sic] his payment status." Tr. 119.

If the veteran failed to report a dropped class and collected a payment larger than he could properly claim, the agency's practice was to recover the overpayment by issuing smaller payments when the veteran re-enrolled. According to strict VA policy the veteran should have returned the overpayment at once, but this policy too seems to have been honored mainly in the breach. As DiMeo admitted, if the veteran continued to attend most of his classes or planned to return to school the next semester, "then the veteran was told yes, keep that payment because subsequently it will be taken out of your due checks." Tr. 105, 107. Other VA employees have submitted affidavits showing that they understood the agency's policy to be as DiMeo described it.

### 2. *The Plaintiff's Conduct*

The plaintiff reported to the VA office on the CSUF campus that he was changing his program from economics to theatre arts and that he was reducing his academic load from twelve units to nine. He noted his changed academic schedule on VA form 1999b on September 3, 1975, the same day he received the first check for a twelve-unit program in economics.

Because he could not attend his classes at CSUF and perform his duties as Contact Representative at Fresno City College, he stopped attending classes by September 17,

1975. At about the same time, he told the VA office at CSUF to discontinue his benefits, though he did not officially withdraw from school until November 26, 1975. The VA sent him full educational payments for September, October, and November. He assumed that the VA would deduct these overpayments from later checks. In fact, the VA issued him a check for only about $9 in December, which led him to believe that the agency had begun to deduct the earlier overpayments. He returned the overpayments as soon as the VA sent him an overpayment notice.

### 3. *Why the Penalty is Inappropriate*

The plaintiff's record was unblemished. Co-workers and superiors praised his contributions to on-campus veterans' programs. The plaintiff informally reported all changes in his class schedule and never attempted to defraud the Government. The agency removed him for failing to follow rules that the agency admits were "honored in the breach," if at all. The VA finally clarified its overpayment policy in a newsletter issued on January 31, 1976—nearly two weeks after sending the plaintiff a letter of proposed removal. To punish such unintentional failings with removal could hardly deter other employees from being similarly confused or misled.

The penalty imposed here is so harsh as to amount to an abuse of discretion by the agency. In short, the sanction outweighs the offence and cannot stand.

### CONCLUSION

After considering the history of this case, the court refuses to order yet another MSPB proceeding or to reinstate the plaintiff in the service of an agency that has rebuffed him for more than nine years. The court simply voids the removal and awards the plaintiff the back pay and benefits to which the law entitles him. *See* 5 U.S.C. § 5596 (1976); *see also Power v. United States*, 209 Ct.Cl. 126, 130, 531 F.2d 505, 507–08 (1976) (setting aside removal and awarding back pay without remand to determine lesser penalty), *later proceed-ings*, 220 Ct.Cl. 157, 597 F.2d 258 (1979) (calculating award of back pay), *cert. denied*, 444 U.S. 1044, 100 S.Ct. 731, 62 L.Ed.2d 730 (1980).

The parties shall compute the amount of back pay due and submit a proposed award to the court within 45 days from the date of this opinion.