**W. Lloyd GRAFTON, Petitioner,**

v.

**DEPARTMENT OF the TREASURY, Respondent.**

**No. 88–3209.**

United States Court of Appeals, Federal Circuit.

Dec. 29, 1988.

William M. Pace, Aberdeen, Miss., argued for petitioner.

Frederick A. Battista, Office of Chief Counsel, Bureau of Alcohol, Tobacco, and Firearms, Dept. of the Treasury, of Washington, D.C., argued for respondent. With him on the brief was Michelle Davis, Asst. Chief Counsel. Also on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director Robert A. Reutershan, Asst. Director and Stephen J. McHale, Commercial Litigation Branch, Dept. of Justice, Washington, D.C.

Before NIES, Circuit Judge, COWEN, Senior Circuit Judge, and ARCHER, Circuit Judge.

COWEN, Senior Circuit Judge.

W. Lloyd Grafton (petitioner) appeals from the final decision of the Merit Systems Protection Board (MSPB or board), Docket No. DA07528710466, which sustained his removal by the Department of the Treasury's Bureau of Alcohol, Tobacco, and Firearms (the agency) from his position as a Criminal Investigator (Special Agent). We vacate and remand for the imposition of a lesser penalty.

## BACKGROUND

The agency based its removal of petitioner on five charges including: (1) inappropriate discharge of a firearm, (2) acting outside the official scope of his authority, (3) seizure of property not specified in a search warrant, (4) falsification of a search warrant return, and (5) failure to properly follow property control procedures. The MSPB's administrative judge (AJ) sustained all of the charges except the charge of falsification of a search warrant return. The board denied review.

### 1. Shooting Incident

Two of the four charges sustained by the AJ relate to petitioner's conduct during an incident that occurred outside of his home on December 28, 1986. The facts show that at about 3:10 a.m. on that date, petitioner was awakened by two of his children who told him that someone was outside of their bedroom window. Petitioner went to the bedroom window; saw a man standing outside, and asked him to leave. The man responded with a sarcastic remark. Petitioner then dressed, armed himself with his service revolver, and went outside to investigate. Once outside, he did not see anyone in his yard, but heard movement from a van parked on the street. He walked to the front of the van and saw a man inside observing his house. Petitioner then stated that he was a police officer and ordered the man to put his hands on the steering wheel. When the man failed to comply and dropped his hands as if to reach for a weapon, petitioner fired a shot into the left side of the van. The man then drove the van forward, stopped, and opened the door as if he was getting out. Petitioner then fired a shot into the rear of the van striking the rim of a spare tire. The van then drove away.

Petitioner reported the incident immediately to both the local police and his superiors. The police arrested a suspect at about 5:30 a.m. the same morning and charged him with the offense of "Peeping Tom." Petitioner's agency investigated his conduct during the incident and charged him with inappropriately discharging a firearm and acting outside the official scope of his authority. The AJ sustained both of those charges.

### 2. Seizure of Evidence

One of the two remaining charges sustained by the AJ relates to two reel-to-reel

tapes and an attached transcript that petitioner seized during his execution of a search warrant on July 28, 1984. The facts establish that the warrant authorized a search for, and the seizure of: "Firearms which are not registered in The National Firearms Registration and Transfer Record, *Records and Receipts* indicating the acquisition of those firearms and *other evidence* of illegal receipt and possession of unregistered firearms ..." (Emphasis added.) The search revealed two reel-to-reel recordings, one of which was labeled with the name of a felon who had been involved in gun dealing, and one of which was labeled with the code name of an investigation that had been conducted by the Federal Bureau of Investigation. A transcript was attached to one of the tapes. Petitioner's supervisor was present at the search and knew that the tapes and transcript were being seized.

### 3. *Failure to Follow Property Control Procedures*

This charge also arose out of the incident in 1984, when petitioner conducted a search and was accompanied by his supervisor. The AJ found that petitioner failed to document the property seized on a prescribed form as required by the regulations, and that he had failed to follow property control procedures in that he failed to maintain proper records of the movement of the property seized.

### DISCUSSION

#### I. *Shooting Incident*

As petitioner was not charged with a crime for his actions during the shooting incident, and as there is no evidence that his actions were criminal, the AJ based her conclusion that petitioner had inappropriately discharged a firearm on her finding that "agency policy prohibits the firing of warning shots and prohibits any shooting unless an agent is threatened with immediate death or serious physical bodily harm." The agency policy referred to by the AJ is apparently ATF Order 3000.1D, Chapter C, § 32 (Dec. 13, 1984) entitled "Firearms." The problem with the AJ's reasoning is

that the terms of that section establish that it applies only to the use of firearms in connection with the performance of official duties.

For example, subsection (a) of the section, entitled "Carrying of Firearms," states that "[a] special agent shall be armed at all times when actively engaged in law enforcement work and at all other times the agent deems it necessary *in connection with official duties.*" (Emphasis added.) Although part (1) of subsection (b) of the section, entitled "Use of Firearms," does state that firearms are to be used only if there is a danger of loss of life or serious bodily injury and that warning shots will not be fired, part (2) of that subsection provides that "[w]hen firearms are fired by a special agent of [sic] any other participating officer *in the performance of duty* (other than a training exercise), such incident will be reported verbally to the [special agent in charge] as soon as possible." (Emphasis added.) If part (1) of subsection (b) had been intended to apply to the off-duty use of firearms, part (2) of that subsection would logically have required the reporting of that off-duty use, not simply the reporting of use in the performance of duty.

In addition, if part (1)'s limitation on the use of firearms to situations in which there is a danger of loss of life or serious bodily injury was applied broadly to the off-duty use of firearms, as the AJ concluded it did, special agents would be prevented from using firearms for activities such as hunting and target shooting. There is no indication that it was intended to so apply, however.

In sum, we conclude that the AJ erred as a matter of law in interpreting ATF Order 3000.1D, Chapter C, § 32 (Dec. 13, 1984), as applying to the off-duty use of firearms. *See* 5 U.S.C. § 7703(c) (1982). We therefore set aside her decision sustaining the charge that petitioner improperly used a firearm.

We also set aside the AJ's decision sustaining the charge that petitioner acted outside the official scope of his authority as

that charge is unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c) (1982). There is simply no evidence that petitioner was either acting during the incident in his official capacity as a Bureau of Alcohol, Tobacco, and Firearms criminal investigator or that he represented himself as acting in that capacity. The fact that no charges were brought against him by law enforcement authorities indicates that his actions were lawful.

## II. *Seizure of Evidence*

■ The AJ sustained the agency's charge that the tapes and transcript were not specified in the search warrant, and that petitioner therefore violated ATF Order 3240.1, Chapter B, § 17 (June 12, 1981), by seizing them. That section provides that only certain items including, as is relevant here, items "described in the search warrant as objects of the search," and "evidence of crimes, including items which are circumstantial evidence that a crime has been committed or that a particular person has committed it," may be seized pursuant to a search warrant.

We agree with petitioner that this charge is unsupported by substantial evidence, and therefore, we set it aside. The search warrant authorized the seizure of all evidence of the receipt and possession of unregistered firearms. It is clear to us that the possible relevance of the two tapes which had been found together, one of which was labeled with the name of a felon who had been involved in gun dealing and one of which was labeled with the code name of an F.B.I. investigation, was evident from their labels. The fact that petitioner's supervisor did not object to the seizure of the tapes and the attached transcript, even though he knew that they were being seized, confirms that he too believed that it was proper to seize them. In these circumstances, we find that petitioner did not violate agency policy in seizing the two reel-to-reel tapes and the attached transcript. *See United States v. Santarelli*, 778 F.2d 609, 615–16 (11th Cir.1985).

## III. *Property Control Procedures*

■ The AJ also sustained the agency's charge that petitioner had failed to properly follow property control procedures by: (1) failing to list the tapes and transcript on an ATF Form 3400.16, thereby violating ATF Order 3400.1, Chapter B, § 11(a) (May 13, 1985), and (2) failing to maintain proper records of the movement of the tapes, thereby violating ATF Order 3400.1, Chapter C, § 29 (May 13, 1985). We disagree with petitioner's argument that this charge is not supported by substantial evidence. Three agency employees testified that the tapes and the attached transcript were not listed on the forms on which petitioner was required to record them. The AJ also noted that although petitioner had testified that he had taken the tapes to the U.S. Attorney and left them with her, there was no record of the tapes being so transferred. Those statements provide substantial evidence to support the AJ's decision to sustain this charge.

## IV. *Penalty*

■ Since three of the four charges upon which the board's decision rested have been eliminated, there remains only the charge that in 1984 petitioner failed to properly follow property control procedures as required by the regulations. Although we have found that the decision of the AJ on this item is supported by substantial evidence, we are of the opinion that the significance of this charge is considerably diminished by the delay of nearly three years that elapsed between the time the violation occurred and the time the charges were brought by the agency. The lack of evidence of similar violations in the interim indicates that this was an isolated incident.

In her decision, which sustained petitioner's removal, the AJ relied heavily on the importance of the two charges stemming from the shooting incident and minimized the importance of the other charges. In that connection, we note that the AJ erred in relying on *Stines v. Department of Justice*, 22 M.S.P.R. 511 (1984). We reversed that decision in *Stines v. Department of Justice*, 765 F.2d 156 (Fed.Cir.1985) (unpub-

lished), and ordered Stines reinstated in his former position.

In this state of the record, it is apparent that the penalty of removal in this case is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion ..." *Villela v. Department of the Air Force,* 727 F.2d 1574, 1576 (Fed.Cir.1984) (quoting *Power v. United States,* 531 F.2d 505, 507, 209 Ct.Cl. 126 (1976), *cert. denied,* 444 U.S. 1044, 100 S.Ct. 731, 62 L.Ed.2d 730 (1980)).

We conclude that a suspension of not more than 30 days would fall within the tolerable limits of reasonableness for the single charge that we have sustained. *See Mitchum v. Tennessee Valley Auth.,* 756 F.2d 82 (Fed.Cir.1985); *Douglas v. Veterans Admin.,* 5 MSPB 313, 332, 5 M.S.P.R. 280, 306 (1981). Accordingly, the board's decision is vacated and the case is remanded to the MSPB with instructions to determine an appropriate penalty in accordance with this opinion. The petitioner is entitled to recover his costs.

AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.

NIES, Circuit Judge, dissenting in part.

I would reverse on all charges. Three years after the fact, the agency charged Grafton with a failure to follow required property control procedures. In my view, the AJ erred in sustaining this charge where the agency proved only that Grafton did not follow correct procedures. To provide a basis for disciplinary action in itself, the charge necessarily includes an element of wrongful intent or culpability. *Cf. Naekel v. Department of Transp.,* 782 F.2d 975, 978 (Fed.Cir.1986) (wrongful intent is element of charge of "falsification" of information on employment application). If there is proof only that the procedures were violated, such violation might be relevant to a charge of unsatisfactory or unacceptable performance; but poor performance is not a basis alleged here for removal. To hold that violation of a regulation concerning internal procedures on keeping

track of property is *ipso facto* a ground for removal or other disciplinary action would subvert the safeguards of Chapters 43 and 75 respecting performance-based disciplinary action. *See Lovshin v. Department of the Navy,* 767 F.2d 826, 841 (Fed.Cir. 1985), *cert. denied,* 475 U.S. 1111, 106 S.Ct. 1523, 89 L.Ed.2d 921 (1986). Because there is *no* evidence of Grafton's wrongful intent or even a suggestion why it would be to Grafton's advantage to deliberately fail to list the property on the forms, it can only be concluded that his failure was at most a negligent omission. Accordingly, the charge is not supported by substantial evidence.

Since I agree with the majority that the other charges were not established, I would reverse the removal action and remand for the board to direct appropriate remedial action.