*819 This case is before the court on cross-motions for summary judgment. Plaintiff is challenging the decision of the Merit Systems Protection Board (mspb)[1] affirming his removal from civilian employment with the Navy. Upon consideration of the briefs, and after oral argument, we uphold the mspb.
Plaintiff was first employed by the Navy in March 1967 and worked from May 1969 in the Naval Air Systems Command (NAVAIR). From April 1973 to July 1976, plaintiff was team leader of the Trainer/Transport Team, ASW and Special Mission Branch, of the Logistics Management Division, a GS-346-14 position (Supervisory Logistics Management Specialist).
Effective July 6,1976, plaintiffs job was abolished, due to a division reorganization, and he was put on a detail assignment as coordinator of a project to establish certain aircraft repair and rework facilities for the government of Iran (the Imperial Iranian Navy Helicopter Support Program). Although this job seems to have been the only 346-series position available at that time, plaintiff expressed some reservations about it, because it required the acquisition of some skills that plaintiff did not have, particularly some knowledge of foreign military sales.
Plaintiffs performance on the detail, which lasted from October 15,1976 to March 14,1977, was rated as unsatisfactory. According to his superiors, plaintiff lacked effective planning and a sufficient awareness of his duties and responsibilities. Numerous discussions with the head of his branch did not result in improvement. Plaintiffs performance in organizing and heading a survey team in preparation for travel to Iran was so deficient that he was removed as that team’s conference chairman.
Starting in February 1977 of the detail period, plaintiff began to be absent from work. He supplied doctors’ statements that he was experiencing medical and emotional reactions to stress. The Navy had plaintiff undergo a fitness for duty examination and Dr. Paul Ventry, director of the U.S. Army Civilian Employees’ Health Service for *820 metropolitan Washington, D.C., found him fit. One of the examining physicians (Dr. Gerald Polin) considered him unfit for his particular job due to anxiety about it.
Despite the situation that was developing, and over the objection of plaintiffs branch chief, plaintiff was assigned permanently to the detail position on April 10, 1977. When plaintiffs performance did not improve, the Navy scheduled a psychiatric examination, removed him completely from the Iran survey team and denied him a within-grade pay increase.[2] Plaintiff also did not satisfactorily complete four tasks that were to take the place of the survey team work that he no longer did, although the psychiatric examination found nothing physically or mentally wrong beyond anxiety and depressive reaction to work pressures.
On July 14, 1977, plaintiff was notified of proposed removal for: (1) failure to perform duties; (2) failure to perform program-related tasks; (3) failure to improve performance after notice of performance deficiencies; and (4) failure to supervise personnel properly and otherwise to coordinate and manage properly the program tasks assigned. Plaintiff replied orally to these charges on September 2, 1977, to Rear Admiral Cyril Faulders, Jr., who ultimately made a recommendation for removal. This recommendation was put in plaintiffs file but was not furnished to him.
Plaintiff declined the option of another psychiatric examination. Dr. Ventry was then requested to make a recommendation concerning plaintiffs fitness, which he did, concluding that plaintiff was fit. This recommendation was not given to plaintiff.
The final agency decision of removal was made on November 4, 1977, and that decision was affirmed by the MSPB on August 6, 1979. Plaintiff filed in this court on June 10,1980.
Plaintiff complains: (1) that his removal violated due process because it was based in part on "exparte”communi-cations, i.e., the recommendations from Faulders and Ventry; (2) that the MSPB improperly based its affirmance *821 of the agency in part on plaintiffs performance while still on detail; (3) that his removal was improper because there was no change in circumstances from the time of his hiring, as required by the Federal Personnel Manual to justify removal; (4) that he was not apprised of all of the documents relied upon by the agency, contravening 5 C.F.R. § 752.404 (1982); (5) that he was not given a "full and fair” opportunity to perform, as required by Instruction 12752.1 of the Office of Civilian Manpower Management of the Department of the Navy (June 19, 1975); and (6) that the MSPB acted arbitrarily and capriciously.
On the allegation of a due process violation, defendant responds that the recommendations from Faulders and Ventry are not of the type of ex parte communication that this court found offensive to due process in Camero v. United States, 179 Ct. Cl. 520, 375 F.2d 777 (1967), because they are not communications to the decision-maker from an adversary. The Faulders and Ventry communications merely were internal documents of an advisory nature. Plaintiff refers this court, however, to Ralpho v. Bell, 569 F.2d 607 (D.C. Cir. 1977), in which a due process violation was found where there was no adversarial communication — where an agency simply did not furnish a claimant with an investigatory report on which it was going to place principal reliance in time for him to challenge it. We conclude, though, that Ralpho v. Bell does not apply. There is a great difference between screening a claimant from virtually all information concerning his claim, as happened in Ralpho v. Bell, and allowing a decision-maker to call for advice in making his decision, as happened in the present case. We have before us nothing more than an example of permissible institutional decision-making. Further, plaintiff here had adequate written notice of the charges against him and did reply thereto.
Plaintiffs charge that the mspb improperly considered plaintiffs performance while on detail, instead of restricting its attention to performance after permanent assignment, is answered by the mspb itself. In its decision it states, "At the outset it must be observed that only the appellant’s performance while he was in a permanent assignment is before us for adjudication.” Plaintiff protests that the mspb *822 nevertheless considered plaintiffs detail performance for the purpose of showing that plaintiff indeed had the proper background for performing at the permanent assignment— because he had worked at that very job for 5 months. We find this, however, to be an entirely proper consideration of plaintiffs past job experience and highly relevant to the question of whether defendant asked plaintiff to do a job that he could not have been expected to do. The mspb reasonably considered plaintiffs opportunity to gain experience while on detail. Plaintiff was not removed for his performance during that time, as the mspb makes clear, but rather he was removed for his failure to perform at a job that he had had 5 months to learn.
Plaintiff also complains that his removal was improper because there was no change in circumstances from the time of his hiring, i.e., that plaintiff had an anxiety condition when he started the permanent assignment and he was fired for it. It is a correct statement of policy, from the Federal Personnel Manual, that an agency cannot use as a ground for removal something that it knew about at the time of hiring.[3] It appears from the Manual, as defendant argues, that this regulation is meant only to apply to initial hiring by the agency, to ensure that all government employees start on equal footings. We are not told by plaintiff why it should apply in this case. Moreover, defendant points out that plaintiff was fired for poor performance and not because he had an anxiety condition.
Plaintiffs remaining complaints also fail. It appears from the record and the board’s opinion that plaintiff was properly given all of the documents from adversarial sources that were relied upon by the deciding officials. He certainly had a "full and fair” opportunity to perform, particularly in view of his break-in period during the detail and the extensive work put in by his superiors to assist him.[4] There certainly is substantial evidence on the record *823 to support the mspb’s conclusion that plaintiffs failure to perform warranted dismissal. The mspb did not act arbitrarily or capriciously, and it committed no legal error. Plaintiff was fully on notice of the four charges against him and of the basis for the charges, and he responded thereto before final action was taken.
it is therefore ordered that plaintiffs motion for summary judgment is denied. Defendant’s cross-motion for summary judgment is granted. The petition is dismissed.

 Plaintiff filed originally with the Federal Employee Appeals Authority which became the Merit Systems Protection Board during the pendency of the administrative appeal.

 Plaintiff was rated as satisfactory, however, for the period from April 1,1976 to March 31, 1977. This period includes the period for which he was rated as unsatisfactory.

 Subchapter S3, ¶ S3-2b(l), Federal Personnel Manual, Supp. 752-1, states in pertinent part: “If an agency hires an applicant with full knowledge of certain facts concerning his fitness, it may not properly propose adverse action against the employee on the basis of those same facts at a later date if there is no change in circumstances* * *.[Emphasissupplied.]

 Plaintiff asserts that he was prevented from performing properly due to his anxiety reaction to work pressures. This anxiety may well have been an inhibiting factor to proper performance but we do not understand that plaintiffs reaction to his *823 inability to perform can be made into an excuse for that inability. Defendant found repeatedly that plaintiff was physically and mentally fit. Plaintiffs inability flowed from a simple lack of ability, and defendant chose to remove him for that.