Rudolph S. GONZALES, Petitioner,

v.

DEFENSE LOGISTICS
AGENCY, Respondent.

Appeal No. 84–1753.

United States Court of Appeals,
Federal Circuit.

Sept. 12, 1985.

Shelby W. Hollin, San Antonio, Tex., argued for petitioner.

Dennis C. Egan, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Washington, D.C.

Joree McKinney Brownlow, Asst. Counsel, Defense Logistics Agency, of counsel.

Before BENNETT, SMITH and BISSELL, Circuit Judges.

BENNETT, Circuit Judge.

Rudolph S. Gonzales appeals the final order of the Merit Systems Protection Board, 22 M.S.P.R. 652 (1984), which declined to grant review of its presiding official's decision of March 7, 1984, No. DA07528410095, affirming the action of the Defense Logistics Agency (DLA) which removed him from the position of warehouse worker foreman at Kelly Air Force Base, San Antonio, Texas, on October 28, 1983. We affirm.

## BACKGROUND

The notice to Gonzales of his proposed removal charged him with (1) theft of government property, (2) altering an official document to conceal his theft, (3) withholding material facts in connection with matters under official investigation, and (4) accepting gratuities (whiskey) in violation of written standards of conduct sent to each DLA employee by DLA and acknowledged by petitioner.

DLA's deciding official concluded that the agency had sustained the charges and that removal of Gonzales was warranted. In his appeal to the Merit Systems Protection Board (board), Gonzales stipulated to the first, second, and fourth charges. With respect to the third charge, concealment, the presiding official of the board found that DLA had supported it by a preponderance of the evidence.

On the present appeal Gonzales does not deny any of the charges against him. Instead, he raises several affirmative, technical defenses we summarize as follows: (1) removal was so harsh as to represent an abuse of discretion and it exceeded the permitted range of sanctions, (2) the board, in denying his petition for review, failed to articulate a reasoned opinion providing an adequate basis for review, or to support its decision with substantial evidence, (3) the

board violated a statute and a regulation by failing to transcribe his hearing, and (4) DLA's deciding official was improperly influenced by an ex parte communication, a prohibited personnel practice. Each allegation will be addressed. Since the charges are not denied, they need not be discussed in any detail but we are impressed by their seriousness to the efficient, honest operation of the government and to the particular mission of the DLA.

## DISCUSSION

### I

■ The parties furnished the court with the agency's table of offenses and penalties in effect at the time of the charged misconduct by Gonzales. The table provides for removal as a maximum penalty for a first offense of three of the four charges sustained by DLA: theft, falsification of an official document, and concealment of facts material to an official investigation. Of course, aside from the authority for action taken, there remained the issue of its reasonableness under the facts of the case. Gonzales had 32 years of service with the federal government, including 16 years with the Defense Property Disposal Service, a division of DLA. This is to his credit, but the court will not disturb a penalty unless it exceeds the range of permissible punishment or is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Villela v. Department of the Air Force*, 727 F.2d 1574, 1576 (Fed. Cir.1984). Penalty decisions are judgment calls best left to the discretion of the employing agency. *Hunt v. Department of Health & Human Services*, 758 F.2d 608 (Fed.Cir.1985); *Schapansky v. Department of Transportation*, 735 F.2d 477, 484 (Fed.Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984). The presumption is that government officials have acted in good faith. *Boyle v. United States*, 515 F.2d 1397, 1401 (Ct.Cl.1975).

■ In evaluating the penalty assessed, the board applied the factors set forth in *Douglas v. Veterans Administration*, 5 MSPB 313, 5 M.S.P.R. 280 (1981).

It considered petitioner's long service, his remorse, and all other mitigating factors in his behalf. However, it noted also that petitioner was a supervisor, that he had access to valuable materials including those kept under lock and key, that the Defense Property Disposal Office had sustained losses in excess of one million dollars due to theft, and that removal was consistent with other penalties imposed within the agency where theft was involved. On balance, it was concluded that the seriousness of the misconduct justified the penalty. We agree with the board that the authorized penalty does not exceed the tolerable limits of reasonableness under the facts of this case. There are some offenses, such as theft of government property and falsification of government records, which make a nexus between the forbidden conduct and the efficiency of the service "obvious on the face of the facts." *Phillips v. Bergland*, 586 F.2d 1007, 1011 (4th Cir.1978); *Hayes v. Department of the Navy*, 727 F.2d 1535, 1539 & n. 3 (Fed.Cir.1984). This is such a case.

### II

■ Petitioner objects to the order of the board denying review of the presiding official's decision in that it was inadequate and did not say enough to provide a basis for our review. Where the board agrees with its presiding official to whom it has lawfully delegated the responsibility of holding a hearing and filing an initial decision, 5 U.S.C. § 7701(b) (1982), it need not "reinvent the wheel" when the presiding official has fully addressed the issues. By authorized regulation it has restricted its review of the presiding official's decision to new and material evidence not available when the record was closed, or to where the presiding official's decision was based on an erroneous interpretation of a statute or regulation. 5 C.F.R. § 1201.115 (1984). This was an issue disposed of in the board's favor in *Schaffer v. Merit Systems Protection Board*, 751 F.2d 1250 (Fed.Cir.1985). In a proper situation the board need not so limit its review, for it has authority to consider any action made appealable to it by law, rule, or regulation. 5 U.S.C.

§§ 1205(a)(1), 7701(a). *Connolly v. Department of Justice,* 766 F.2d 507 (Fed.Cir. 1985); *Maddox v. Merit Systems Protection Board,* 759 F.2d 9 (Fed.Cir.1985). We find no error in the board procedures in this case. Since the board made the presiding official's decision final by its refusal to review it, that decision is the decision of the board in this case. We have given the decision our careful scrutiny and find it to be without fault because it was supported by substantial evidence and the law applicable to the removal of Gonzales.

### III

■ Petitioner next objects to the fact that the board, in deciding to decline review, did not have a written transcript of the hearing conducted before its presiding official. It is argued that had such a transcript been available the board might have granted review. It is further contended that the board thus violated 5 U.S.C. § 7701(a)(1), which provides an employee subject to an adverse personnel action with the right "to a hearing for which a transcript will be kept."

Pursuant to section 7701(j) the board has prescribed 5 C.F.R. § 1201.53 concerning the transcript requirement. Hearings are recorded on tape and the regulation provides that a transcript will be made available to the parties upon payment of costs. "Exceptions may be granted in extenuating circumstances for good cause shown," upon written motion. The tape, of course, is available to the board at all times. Does this satisfy the statute in this case? The answer depends on whether an agency regulation reasonably interprets the legislative intent behind the statute. *National Muffler Dealers Association v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979).

The legislative history of the Reform Act contains no comment on the transcript requirement. Although commonly thought of as a writing, the primary definition of a transcript is "a copy of any kind." Black's Law Dictionary 1342 (5th ed. 1979). Thus, we believe that the board's keeping of a tape recording satisfies the section 7701(a)(1) requirement and that petitioner's

speculation that he was prejudiced is without merit.

In addition, we note that, as opposed to section 7701(b) which requires the board to *furnish* a copy of its decision to each party in an appeal and to the Office of Personnel Management, section 7701(a)(1) merely requires the board to *keep* a transcript. This distinction is not without a difference. Although the board originally provided copies of the hearing transcript free of charge, it began its current practice on December 21, 1981. *Compare* 5 C.F.R. § 1201.53 (1981) *with* 5 C.F.R. § 1201.53 (1982). The board explained the change in practice as follows:

The Board has concluded that this amendment would not abridge or otherwise curtail an appellant's rights under the Civil Service Reform Act of 1978. Inasmuch as the legislative history of the Reform Act indicates that Congress intended that the Board provide each appellant the opportunity for a "hearing on the record," the regulation would abide by that intent. The amendment also would accomplish the goal of providing parties with a hearing that is consistent with those described in the Administrative Procedure Act, which provides that a transcript will be made available to the parties only on payment of lawfully prescribed cost.

Moreover, the ultimate availability of hearing transcripts would not be altered by this regulation. The intended effect would be to reduce the burden of providing transcripts in all cases to the parties free of charge and to shift the responsibility for request of and payment for copies of transcripts to the parties themselves.

. . . .

The Merit Systems Protection Board has determined because of the uncertainty associated with the budgetary limitation under which it is currently operating, that good cause exists to require that this regulation be effective immediately upon publication.

Petitioner did not furnish a written transcript to the board with his application for review nor has he done so to the court on

this appeal. He says he could not afford it. This becomes significant because if petitioner wishes to rely on any part of the record of the hearing he is required to provide it to us under Federal Rule of Appellate Procedure 10(b) and local Rule 11. Petitioner has not sought production of a written transcript by relying on the provisions of 28 U.S.C. § 1915 (1982), by bringing the appeal in forma pauperis, which might have satisfied both the board and the court of the good cause and extenuating circumstances which would result in production at the government's expense. 5 C.F.R. § 1201.53. We think that the regulation is entirely reasonable and lawful. The fault here is with petitioner who did not raise below the issue of the lack of a typewritten transcript. This, in addition to the reasons stated, justifies our not considering his argument now. *See James v. Federal Energy Regulatory Commission,* 755 F.2d 154 (Fed.Cir.1985).

## IV

■ In his appeal petitioner places great emphasis on what is alleged to be a prohibited personnel practice as defined by 5 U.S.C. § 2302(b)(11), which reads in pertinent part:

> (b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—
>
> (11) take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning the merit system principles contained in section 2301 of this title.[1]

The regulation allegedly violated under the statute is Defense Logistics Agency Regulation No. 1406.1(VI)(E)(1) (April 21, 1983), which provides in pertinent part that "[f]inal decisions ... to remove employees will be made by the next higher level supervisor who proposed the action."

Keith I. Brown, a supervisory property disposal specialist, proposed the removal of Gonzales. Mary R. Iron Necklace, a property disposal officer, was the next higher level supervisor above Brown. She removed Gonzales. In a memorandum for the Defense Logistics Agency record, she observed that the evidence and Gonzales' own admissions established him as a thief and liar and that his intent to steal for personal gain "in combination with his other offenses render[ed] his retention in a supervisory position beyond consideration." She continued:

> Were it with[in] my purview, and government regulations permissive of so doing, I would recommend Mr. Gonzales' demotion to a non-supervisory position and 30 day suspension without pay from that lower graded position, allowing him an opportunity with resumed honorable service to accrue sufficient tenure to retire. However, as I am unaware of permissive circumstances to effect his demotion, I must with great reluctance recommend Mr. Gonzales' removal from Federal Service effective COB 30 December 1983.[2]

At the hearing before the presiding official, Ms. Necklace testified that she did discuss the removal of Gonzales with her supervisor, Colonel David C. Whitworth. Gonzales now argues that Whitworth was an adversary and that but for her conversation with Whitworth, Necklace would have chosen a lesser penalty than removal. *Camero v. United States,* 375 F.2d 777 (Ct.Cl.1967). The presiding official found that petitioner failed to provide "any evidence" that an impermissible ex parte communication occurred. We think he was correct for several reasons which demonstrate that substantial evidence supports his finding.

---

1. Before the Merit Systems Protection Board, petitioner also relied on 5 U.S.C. § 2302(b)(11) (discrimination against an employee for conduct which does not adversely affect his performance or that of others). The presiding official rejected this alleged prohibited personnel practice for failure of proof. This section is not referenced in petitioner's brief to the court.

2. The presiding official's opinion notes that Ms. Necklace testified at the hearing before him that by use of the word "recommend" she meant that she intended to recommend to the personnel office that it draft a letter for her signature effecting her decision to remove Gonzales.

The investigation into the rampant theft occurring at the Defense Property Disposal Office was initiated by Whitworth's predecessor. Because Whitworth's office is located in Memphis and Gonzales and Necklace were located in San Antonio, it is improbable that Whitworth would have personal motives that were improper as to Gonzales. In fact, there is no evidence that the two individuals ever had any kind of contact. *Cf. Sullivan v. Department of the Navy,* 720 F.2d 1266 (Fed.Cir.1983) (decision-maker sought vengeance against employee who had previously filed a grievance against him).

Gonzales contends that Colonel Whitworth actually made the removal decision, in violation of the regulation. No evidence supports this view. When Gonzales had the opportunity to do so at the hearing, he chose not to examine either Necklace or Whitworth concerning the substance of their conversation, although he says the presiding official did so. He presents nothing at all to overcome the presumption that government officials act in good faith in deciding whether to remove an employee. *Grover v. United States,* 200 Ct.Cl. 337, 344 (1973). It takes "well-nigh irrefragable proof" to overcome the presumption. *Knotts v. United States,* 121 F.Supp. 630, 631 (Ct.Cl.1954). It is the burden of petitioner to overcome that presumption. These principles have consistently been maintained in the many precedents which have followed *Knotts. Cf. Fucik v. United States,* 655 F.2d 1089, 1097 (Ct.Cl.1981); *Kalvar Corp. v. United States,* 543 F.2d 1298, 1302 (Ct.Cl.1976), *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977); *Poschl v. United States,* 206 Ct.Cl. 672, 692 (1975).

Even a cursory reading of the statement by Necklace will show that the conversation with Whitworth did not change her mind about the action it was necessary for her to take. While feeling compassion for Gonzales, she said quite plainly that it was not within her "purview, and government regulations" to give him a lesser penalty. Also, she said that she was "unaware of permissive circumstances" which would permit some other sanction. She would have mitigated the penalty had it been possible. However, considering the regulations and the seriousness of the offense she did what she had to do, stating that his retention was "beyond consideration."

 There is no prohibition against a decision-maker calling for advice from those who are not in an adversarial position with the offending employee. "We have before us nothing more than an example of permissible institutional decision-making." *Della Valle v. United States,* 231 Ct.Cl. 818, 821 (1982). In the real world of government decision-making, administrators cannot be expected to perform their duties in a complete vacuum without consultations or search for advice. Petitioner has shown us no ex parte contact which is barred by statute, regulation, or practice. *Welcker v. United States,* 752 F.2d 1577 (Fed.Cir.1985). Not only has Gonzales failed to support his allegation of a prohibited personnel practice, but even assuming some procedural defect here, he has not met the statutory requirement to demonstrate that it was harmful. 5 U.S.C. § 7701(c)(2)(A); *Shaw v. United States Postal Service,* 697 F.2d 1078, 1080 (Fed. Cir.1983).

## CONCLUSION

After thoroughly considering each of the allegations of error, we are persuaded that under our statutorily prescribed standard of review, 5 U.S.C. § 7703(c), there is no legal reason to reverse the board and set aside the removal action by the Defense Logistics Agency. The removal is not procedurally flawed either at the agency or board level. Substantial evidence shows a clear nexus between the misconduct and efficiency of the service, and the decision to remove Gonzales had a rational and lawful basis free from arbitrary or capricious taint.

AFFIRMED.