(1) The United States' motion to dismiss is granted.

(2) Each side shall bear its own costs.

**Linda NEWTON–TURNER, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

No. 02–3156.

United States Court of Appeals, Federal Circuit.

Nov. 5, 2002.

Before BRYSON, LINN, and PROST, Circuit Judges.

DECISION

PER CURIAM.

Linda Newton–Turner appeals from the decision of the Merit Systems Protection Board, Docket No. AT–0752–01–0317–I–1, affirming her demotion by the United States Postal Service from the position of Supervisor, Distribution Operations, EAS–16, to the position of Distribution Clerk, PS–5. We *affirm.*

BACKGROUND

Ms. Turner has worked for the United States Postal Service at the General Mail Center in Jacksonville, Florida, since 1980 and as a supervisor since 1986. In October 2000, the agency charged her with failing to perform her duties properly on three occasions and proposed to demote her for failure to perform the duties of her position. After hearing Ms. Turner's responses to the proposed action, the deciding official sustained the proposed adverse

action and issued a letter explaining his decision.

The first incident occurred on August 18, 2000, when Ms. Turner was assigned to supervise operations in a loading dock area at the Postal Service facility. The area was full of unprocessed mail, and more mail remained unloaded in containers on a truck from St. Petersburg, Florida. However, the employees under Ms. Turner's supervision processed only a small portion of that mail during the period in which she was working. When Ms. Turner's supervisor, Ms. Jewett, asked for a written explanation, Ms. Turner simply stated that "no overtime had been hired" and that because no one else had asked for overtime to be authorized, she believed it was not necessary. In sustaining that specification, the deciding official stated that Ms. Turner should have notified a superior and asked for assistance. By way of further explanation, he noted that Ms. Turner had been told multiple times what her responsibilities were and that she had nonetheless failed to follow the instructions she had been given.

Second, on August 29, 2000, Ms. Jewett noticed that there was a large amount of "states mail" to be processed in the operation under Ms. Turner's supervision, but that only two employees were assigned to the area. Because it would have been impossible for the two employees to process the states mail before the deadline, Ms. Jewett questioned Ms. Turner about the situation. Ms. Turner responded, "We just leave this mail, right?" Ms. Jewett then reminded Ms. Turner that supervisors do not "leave" mail unprocessed, and directed her to call for overtime to complete the job. Ultimately, Ms. Turner complied and the mail was processed. In sustaining the second specification, the deciding official concluded that the situation was resolved only because of Ms. Jewett's

actions, and that Ms. Turner had failed to inform her supervisor of the conditions and take appropriate action to solve the problem.

The third incident occurred on August 30, 2000, when another supervisor at the Jacksonville facility advised Ms. Jewett that he needed additional staffing. Ms. Jewett went to the area under Ms. Turner's supervision to obtain the additional employees but was unable to find her. Ms. Jewett therefore assumed that Ms. Turner was at lunch with the employees under her supervision. Ms. Jewett attempted to locate Ms. Turner several times over the next hour, including after the clerks assigned to Ms. Turner had returned from lunch, but she was still unable to find her. Because the clerks assigned to Ms. Turner had little or no mail to process upon their return from lunch, Ms. Jewett re-assigned them to Mr. Wilson, another supervisor at the facility. Later, when Ms. Jewett inquired why Ms. Turner took an extended lunch and why her employees had no productive work to do after taking their lunch breaks, Ms. Turner responded that she had taken her lunch and her break together and that she assumed Mr. Wilson could supervise her employees. In sustaining that specification, the deciding official stated that while it is normal procedure for supervisors to go to lunch at the same time as their employees, it is also the responsibility of supervisors to ensure that their employees have enough productive work available to keep them occupied during working hours. He determined that Ms. Turner had failed to fulfill her duties in that regard.

Ms. Turner appealed to the Board from the decision demoting her. The administrative judge assigned to the case held an evidentiary hearing during which Ms. Turner, Ms. Jewett, and two other employees at the Jacksonville Mail Center testified.

Following the hearing, the administrative judge sustained all three specifications and ruled that the charged conduct was serious and directly impacted the efficiency of the Postal Service. The administrative judge therefore upheld the penalty of demotion, especially in light of the fact that Ms. Turner "had been repeatedly counseled as to her supervisory responsibilities, and prior disciplinary actions had failed to improve her performance." The full Board denied Ms. Turner's petition for review, and this appeal followed.

## DISCUSSION

■ Ms. Turner raises three challenges to the Board's decision. First, she argues that the Postal Service did not give her adequate advance written notification of the basis for her demotion. She maintains that the decision letter found her guilty of "failure to follow instructions," while the proposed notice charged her with "failure to properly perform duties." However, an agency need only apprise an employee of the nature of the charges "in sufficient details to allow the employee to make an informed reply." *Brewer v. United States Postal Serv.*, 227 Ct.Cl. 276, 647 F.2d 1093, 1097 (Ct.Cl.1981). The notice of proposed adverse action was amply sufficient to enable her to respond to the charges against her. The decision letter did not sustain her demotion based on a charge different from those set forth in the notice of proposed adverse action; the decision letter merely noted that Ms. Turner had been given instructions as to how to perform her duties and that she had failed to follow them. Following instructions from her supervisor was clearly part of the proper performance of Ms. Turner's duties. Accordingly, there was no variance between the agency's charges and the grounds of its decision.

Second, Ms. Turner argues that the Board's findings in regard to specification three are not based upon substantial evidence because the agency did not prove that specification by a preponderance of the evidence. Ms. Turner claims that "[n]either the proposing official, the deciding official nor the AJ, found, or even alleged that Ms. Turner knew that she was assigned exclusively to [the] operation [in question]." However, the testimony of Ms. Jewett supports the administrative judge's finding that Ms. Turner did not properly perform her duties on August 30, because she did not ensure that the employees under her supervision were productively employed during an extended period of her absence from the work area.

■ Third, Ms. Turner contends that the penalty imposed was too harsh. When misconduct charges are proved against a federal employee, the selection of a penalty lies within the agency's discretion. *Parker v. United States Postal Serv.*, 819 F.2d 1113, 1116 (Fed.Cir.1987). This court will not disturb such a determination unless it is unauthorized or exceeds the bounds of reasonableness. *Gonzales v. Defense Logistics Agency*, 772 F.2d 887, 889 (Fed.Cir. 1985). Ms. Turner's punishment is not unauthorized or unreasonable, especially given her disciplinary history. We therefore uphold the Board's decision sustaining Ms. Turner's demotion.