NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3324


JESSE J. CORLEY,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.


Jesse J. Corley, of Catonsville, Maryland, pro se.

Jane C. Dempsey, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With her on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General; Jeanne E. Davidson, Director; and Franklin E. White, Jr., Assistant Director.

Appealed from:  Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3324

JESSE J. CORLEY,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

Petition for review of the Merit Systems Protection Board in DC075206881-I-1.

_____

DECIDED:  May 27, 2008

_____

Before NEWMAN, and SCHALL, <u>Circuit Judges</u>, and ZOBEL, <u>District Judge</u>.[*]

NEWMAN, <u>Circuit Judge</u>.

Jesse J. Corley seeks review of the decision of the Merit Systems Protection Board affirming his removal from employment by the Department of Veterans Affairs, based on thirty-two counts of absence without leave (AWOL).  <u>Corley v. Dep't of Veterans Affairs</u>, DC075206881-I-1 (M.S.P.B. July 26, 2007).  Mr. Corley states that the Board overlooked certain factual and evidentiary issues, and that the totality of the evidence does not support the removal action. On review of the issues and arguments, we <u>affirm</u> the Board's decision.

_____

[*]     Honorable Rya W. Zobel, United States District Court for the District of Massachusetts, sitting by designation.

BACKGROUND

Mr. Corley was employed as a GS-13 Supply Systems Analyst at the Office of Prosthetics and Clinical Logistics of the VA. The record shows that on February 6, 2006 Mr. Corley began medical treatment at the United States Army Medical Department's Kimbrough Ambulatory Care Center, where he was diagnosed with depression related to stress at work, abnormal EKG, and atypical chest pain. It appears that he did not return to work, for on February 15, 2006 Mr. Corley's supervisor Doris Richardson issued a notice that he was AWOL, stating that he had been absent from work since January 27, 2006 and that he had exhausted all of his sick leave and annual leave. Nurse Janet Lee wrote to the VA on February 21, 2006, stating that he was advised at his visit to Kimbrough to take three weeks of sick leave for mental health reasons.

On February 22, 2006 Mr. Corley returned to the Kimbrough Center, where Dr. Madonna treated him "for anxiety and depression which he stated was due to stress at his place of employment." Dr. Madonna recommended a two-week period of sick leave; this period ended on March 8. On March 15, 2006 Mr. Corley was assessed at the Kimbrough Behavioral Healthcare Service, where Ms. Youle-Schoedel, Chief of Social Work Service, recommended that Mr. Corley be placed on leave without pay status. On March 29, 2006 Mr. Corley's supervisor Doris Richardson issued a memorandum stating that Mr. Corley had again been absent from work since March 14, 2006 and that although she declined to place him on leave without pay status, Mr. Corley could apply to up to twelve weeks of unpaid leave under the Family and Medical Leave Act of 1993 (FMLA).

Mr. Corley went to Dr. Madonna on March 29 to initiate the FMLA application. On April 7 Dr. Madonna wrote in Mr. Corley's "Certification of Health Care Provider" for the FMLA application that "Mr. Corley has been diagnosed with anxiety disorder and

depression" and that his "prognosis is uncertain at this time." In light of the uncertain prognosis, Dr. Madonna was nonetheless "hopeful that he will be able to return to work gradually by 3 months." On June 20, 2006 supervisor Richardson notified Mr. Corley that his twelve weeks of unpaid leave under the FMLA ended on June 5, 2006 and that he was placed in AWOL status as of June 12, 2006. On June 29, Mr. Corley again visited Dr. Madonna, who wrote in her report that "he told me that he was trying to change offices within his place of employment . . . and that he is unable to return to work in the same office." Dr. Madonna's notes also record that Mr. Corley "stated that trying to return to work in the same office would certainly cause a recurrence of his anxiety and depression." Dr. Madonna requested forty-five days of LWOP on Mr. Corley's behalf. This request was not granted. On July 28, 2006 Ms. Richardson issued a Notice of Proposed Removal based on thirty-two counts of AWOL.

On August 16, 2006 Mr. Corley returned to Dr. Madonna, who wrote that he "appeared more relaxed than he was at our first meeting and . . . repeated that he would not be able to tolerate the stress of returning to his previous office and job." Dr. Madonna recommended that Mr. Corley "seek counseling with Behavioral Health at Kimbrough to help define his diagnosis which should provide a basis for treatment and also help him manage his situation." Dr. Madonna also recommended that Mr. Corley be given sixty days of leave without pay in order to continue treatment and further assessment. However, on August 17, 2006, citing the sustained charges of AWOL, acting through Deputy Chief Clinical Logistics Officer Peggy Thames, the VA removed Mr. Corley from employment effective August 25, 2006.

Mr. Corley appealed the removal action to the Merit Systems Protection Board, stating that the VA had engaged in disability discrimination, retaliation for protected EEOC

activity, reprisal for whistleblowing, harmful procedural error, and that the penalty of removal was not reasonable. The Administrative Judge (AJ) affirmed the removal, finding that it was undisputed that Mr. Corley had been AWOL as charged, after exhausting his annual leave, sick leave, and leave under the FMLA. The AJ found that Mr. Corley had not proved disability discrimination, and that he did not allege, and the medical evidence and physician's statements did not show, that his medical condition substantially limited any major life activity. The AJ also found that Mr. Corley had not established retaliation, whistleblower reprisal, or harmful procedural error. The AJ found that the VA had considered the <u>Douglas</u> factors, and that the penalty of removal was within the bounds of reasonableness in view of the extent of the absence without leave. The full Board denied review, and this appeal followed.

## DISCUSSION

A decision of the Board is reviewed to determine whether it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. §7703(c); <u>see</u> <u>Cheeseman v. Office of Pers. Mgmt.</u>, 791 F.2d 138, 140 (Fed. Cir. 1986).

Mr. Corley states that in early 2006 he made protected whistleblowing disclosures of the VA's improper handling of medical recalls which negatively affected patient safety, and that the removal action was a reprisal for this disclosure. The Office of Special Counsel, by letter dated September 6, 2006, reported that Mr. Corley "alleged that the [VA's] adoption of a national tracking database created a substantial and specific danger to public health and safety, because hospitals were not monitoring and answering the recall notices on the database." The Special Counsel found that "the information [Mr. Corley] provided is

insufficient for us to determine with a substantial likelihood that a substantial and specific danger to public health or safety has occurred or continues to occur." The Special Counsel informed Mr. Corley that his file has been closed.

The Board found that this purported whistleblowing was not a contributing factor to the removal action because "[t]he agency has presented very strong evidence supporting its unauthorized absence charge and removal and the appellant has not shown that Richardson, Thames or any other official suffered any adverse consequences because of his disclosure or otherwise had a strong motive to retaliate." The Board stated: "Neither has he identified any other similarly situated employees with such a lengthy absence and AWOL who were not whistleblowers, but were not removed." The Board held that the VA had established by clear and convincing evidence that it would have removed Mr. Corley in the absence of any whistleblowing. We discern no reversible error in the Board's ruling with respect to whistleblowing. Mr. Corley does not dispute the thirty-two counts of AWOL.

Mr. Corley also states that the penalty of removal is disproportionate to the sustained charges of AWOL. He points to his fourteen years of federal service and to his outstanding overall evaluation ratings prior to his removal. He states that VA Handbook 5021, entitled "Range of Penalties for Stated Offenses," provides that the maximum penalty for a first offense of AWOL is a letter of reprimand. The deciding VA official Ms. Thames declared to the Board that she "carefully reviewed the evidence record and the Douglas factors, including his years of service, his past work record, the seriousness of the offenses with which he was charged, and whether there were any mitigating factors justifying mitigation of the proposed penalty." Citing "the department's workload, the need for Mr. Corley's services, his failure to complete [an assigned task], Ms. Richardson's prior

warnings regarding excessive absences, and my uncertainty whether he was ever going to return to work," Ms. Thames determined that removal was warranted.

The VA presented evidence that Mr. Corley had received multiple warnings regarding the serious consequences of repeated AWOL. Mr. Corley does not argue and the record does not show that the prognosis of Mr. Corley's work-related anxiety and depression ever became clear. In light of his own position against returning to work in the same office, the deciding official Ms. Thames could have reasonably believed that Mr. Corley might never return to work. The record contains a report from Dr. Madonna dated August 30, 2006, summarizing Mr. Corley's medical history, and concluding: "I cannot recommend that he is able to return to the same [work] environment."

The Board held that the penalty of removal was justified. The Board emphasized that the VA has wide discretion in maintaining employee discipline and overall efficiency, and that managerial judgment had been properly exercised in removing Mr. Corley in the situation of thirty-two counts of AWOL without any foreseeable resolution of his absences. In Gonzales v. Defense Logistics Agency, 772 F.2d 887 (Fed. Cir. 1985) this court discussed the appropriate standard for reviewing an employing agency's choice of penalty:

> [T]he court will not disturb a penalty unless it exceeds the range of permissible punishment or is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." Penalty decisions are judgment calls best left to the discretion of the employing agency. The presumption is that government officials have acted in good faith.

Id. at 889 (citations omitted). We conclude that the agency's action was within a permissible range, and that error has not been shown in the Board's ruling sustaining the removal. That ruling is affirmed.

No costs.