NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2010-3009

MIRNA HELEN OLMOS,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Mirna H. Olmos, of Belleruse Terrace, New York, pro se.

William J. Grimaldi, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Donald Kinner, Assistant Director.

Appealed from:  Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2010-3009

MIRNA HELEN OLMOS,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Petition for review of the Merit Systems Protection Board in NY0752090095-I-1.

_____

DECIDED: February 4, 2010

_____

Before RADER, BRYSON, and MOORE, <u>Circuit Judges</u>.

PER CURIAM.

Appellant Mirna Olmos appeals from the final decision of the Merit Systems Protection Board (Board) affirming the decision of the Customs and Border Patrol (CBP) to terminate her employment because of her association with an illegal alien. <u>Olmos v. Dep't of Homeland Sec.</u>, NY-0752-09-0095-I-1 (M.S.P.B. April 23, 2009) (Initial Decision) (M.S.P.B. August 5, 2009) (Final Order). Because substantial evidence supports the Board's decision, we <u>affirm</u>.

## BACKGROUND

Ms. Olmos was removed from her position as a Customs and Border Protection Officer at John F. Kennedy International Airport effective December 1, 2008. Ms. Olmos worked for the federal government as an Immigration Inspector with the

Immigration and Naturalization Service (INS) from May 1988 until 2003, when she became an employee of CBP, part of the new Department of Homeland Security (DHS).

In June 2004, CBP issued employee standards of conduct.  In Section 6.3.6 of the standards, labeled "Inappropriate Association," it states:

> Employees will not, except as may be necessary in connection with official assignments or duties, associate with individuals or groups who are believed or known to be connected with criminal activities. This limitation on association covers any social, sexual, financial, or business relationship with a source of information, a suspected or known criminal, or an illegal alien, subject to being removed from the United States of America.

The issue of inappropriate association was also the subject of a "muster" for the week of July 31, 2005 through August 6, 2005.  Ms. Olmos does not deny attending the muster in question.

In December 2004, Ms. Olmos met Rafael Vanegas at a Christmas party given by mutual friends, and the two began dating shortly thereafter.  During the first several months of dating, Ms. Olmos contends she had no idea that Mr. Vanegas was an illegal alien.  In early September 2005, Ms. Olmos and Mr. Vanegas discussed marriage, and Mr. Vanegas told Ms. Olmos that he could not marry her because he did not have "the papers."  The Board found that at this point Ms. Olmos knew that Mr. Vanegas was in the United States illegally.  Ms. Olmos married Mr. Vanegas in a civil ceremony on September 9, 2005.  Mr. Vanegas returned to his native Colombia in December 2006 to obtain an immigrant visa.  Ms. Olmos began submitting forms to have Mr. Vanegas' immigration status adjusted.

On May 9, 2007, CBP's Joint Intake Center in Washington, D.C. received a complaint referral from an adjudications officer at the Citizenship and Immigration Service (CIS), and CBP began an investigation of Ms. Olmos.  CIS denied Mr. Vanegas'

application for waiver on ground of excludability, and Mr. Vanegas remains in Columbia awaiting an appeal of the denial. At the conclusion of the investigation, a member of CBP's Discipline Review Board proposed removal of Ms. Olmos from her position based on a single charge of knowingly associating with an illegal alien. Ms. Olmos and her union representative made an oral reply and submitted multiple documents to Robert Perez, the CBP Director of Field Operations for the New York Field Office. Mr. Perez reviewed the evidence and concluded that Ms. Olmos committed the misconduct as charged. In determining the appropriate penalty, Mr. Perez considered several factors, including Ms. Olmos's 20 years of service, her personal hardships, the duties of CBP officers, statements made by Ms. Olmos's superiors relating to her ability to marry an illegal alien, and four prior suspensions of Ms. Olmos for various infractions. Mr. Perez issued a letter on November 28, 2008, in which he sustained the charge and determined that Ms. Olmos should be removed from her position effective December 1, 2008.

Ms. Olmos appealed CBP's final decision to the Board. Although Ms. Olmos acknowledged that she knew of Mr. Vanegas' status before she married him, Ms. Olmos testified that she relied on the statements of the union president and two CBP supervisors who allegedly told her marrying an illegal alien was allowed. She also argued that other employees had married illegal aliens without being disciplined. The Administrative Judge (AJ) noted that Ms. Olmos never discussed her upcoming marriage with Human Resources, even though she understood that Mr. Vanegas' status could cause problems for her. The AJ further stated that the union president was not authorized to speak for CBP, and the supervisors were not experts in personnel

matters. The AJ found that the CBP employees named by Ms. Olmos as having married illegal aliens had actually married people who were in the country legally. With respect to the penalty, the AJ independently weighed the relevant factors and found the penalty harsh but within the limits of reasonableness in light of her four suspensions, her lack of remorse, and no evidence of disparate treatment. The AJ affirmed CPB's removal of Ms. Olmos in an initial decision. Ms. Olmos appealed to the Board. The Board denied Ms. Olmos's petition for review, and the AJ's initial decision became final. Ms. Olmos appeals.

DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); see Briggs v. Merit Sys. Prot. Bd., 331 F.3d 1307, 1311 (Fed. Cir. 2003). In an adverse action, an agency must prove its charge by a preponderance of the evidence. Burroughs v. Dep't of the Army, 918 F.2d 170, 172 (Fed. Cir. 1990). We "will not disturb a penalty unless it exceeds the range of permissible punishment or is 'so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.'" Gonzales v. Def. Logistics Agency, 772 F.2d 887, 889 (Fed. Cir. 1985) (quoting Villela v. Dep't of the Air Force, 727 F.2d 1574, 1576 (Fed. Cir. 1984)). "Penalty decisions are judgment calls best left to the discretion of the employing agency." Id.

On appeal, Ms. Olmos makes several arguments. First, she argues that she was not placed on notice of the rule prohibiting associating with illegal aliens. Second, Ms. Olmos states that there is evidence other employees married illegal aliens without penalty. Third, she argues she properly relied on the statements of CBP supervisors and her union president when she married Mr. Vanegas. Finally, Ms. Olmos appeals the penalty as arbitrary and unreasonably harsh.[1]

With respect to notice, there is substantial evidence in the record that Ms. Olmos was properly notified of the prohibition against associating with illegal aliens. The AJ noted that the standards of conduct were on the CBP website and that each employee was expected to be familiar with them. Ms. Olmos testified she had heard of the standards of conduct, although she had not read them in their entirety. Ms. Olmos does not deny attending a muster during the week of July 31, 2005, shortly before she married Mr. Vanegas, in which the topic of discussion was inappropriate association. Ms. Olmos also testified that she saw herself in big trouble when she found out Mr. Vanegas was an illegal alien, and she knew his status affected her job. Regarding Ms. Olmos's second argument, the AJ found that Ms. Olmos failed to show that any other CBP employees married illegal aliens. Ms. Olmos called three witnesses to testify on the subject, Warren Pitzer, Richard Pileggi, and Henry Dang. Mr. Pitzer testified he married a woman who entered the United States on a K-1 visa and was not out of status when they were married. Mr. Mileggi testified that he married a woman from the Ukraine who initially entered the United States on a B-2 visa but later applied for asylum

---

[1] Ms. Olmos makes an additional argument that CBP violated her First Amendment freedom of association by terminating her employment. Because Ms. Olmos did not raise this argument before the Board, we will not address it.

and her application was in the adjudication process when they got married. Mr. Dang testified that he married a woman who had been given asylum and was not out of status at any time. Substantial evidence supports the AJ's finding that none of Ms. Olmos's witnesses had actually married illegal aliens as she asserts.

With respect to Ms. Olmos's reliance on the statements of others, Ms. Olmos spoke with at least three individuals regarding her concern with marrying an illegal alien: the union president, Stephen Weekes, and two supervisors, Mohamad Yusef and George Wetteland. Ms. Olmos testified that Mr. Weeks and Mr. Yusef both told her that that marrying an illegal alien was allowed. She stated that Mr. Wetteland told her that she should not associate with an illegal alien, but that it would be a "gray area" if the marriage was genuine. Mr. Wetteland's recollection of the conversation is different from that of Ms. Olmos. During an interview with a CBP Internal Affairs agent as recorded in an affidavit, Mr. Wetteland stated that he was not Ms. Olmos's immediate supervisor, that she told him her husband was trying to get a visa to come to the United States, and he advised her not to get personally involved in the visa process. The AJ noted that even if Ms. Olmos's version was accepted as true, Mr. Wetteland's expertise was not in personnel matters. Mr. Weekes, a union president, did not have the authority to speak for CBP. Mr. Yusef, a witness for Ms. Olmos, testified that he told her that although he did not believe it to be a problem, she should check with higher level management. Therefore, substantial evidence supports the AJ's determination that Ms. Olmos understood that marrying Mr. Vanegas could be a problem and that she did not rely on statements of CBP management with expertise in personnel matter in deciding to marry Mr. Vanegas.

The AJ acknowledged the penalty of removal was harsh in Ms. Olmos's case, but still found it within the limits of reasonableness. J.A. 23 (citing Douglas v. Veterans Admin., 5 M.S.P.R. 280, 308 (1981)). As Mr. Perez stated in the removal letter, one of the major duties of CBP officers is to uphold the laws governing illegal immigration into the United States. The employee standards of conduct and "muster" training indicate the serious nature of inappropriate associations with illegal aliens to the CBP. As a mitigating factor, Ms. Olmos worked as an employee of the federal government for over 20 years. However, during that time she was suspended four times. She received a one-day suspension in 1999 for use of insulting language and disrespectful conduct, a two-day suspension in 2002 for inappropriate use of CBP's email system, a three-day suspension in 2003 for inattention to duty, and a twenty-day suspension in 2006 for failure to follow guidance on the use of a private cell phone at work. Mr. Perez determined these suspensions demonstrate a "severe lack of judgment" by Ms. Olmos. The AJ noted Ms. Olmos does not believe she did anything improper and has not expressed any remorse for her actions. Ms. Olmos provided no evidence of disparate treatment, as she did not know that any CBP employees married aliens who were out of status at the time of the marriage and kept their jobs. CBP did not abuse its discretion in deciding to remove Ms. Olmos.

We therefore affirm the Board's decision.

COSTS

No costs.