NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**WINSOME MESSAM,**
*Petitioner*

**v.**

**NATIONAL ARCHIVES & RECORDS ADMINISTRATION,**
*Respondent*

_____

2019-2417

_____

Petition for review of the Merit Systems Protection Board in No. DC-0752-19-0084-I-1.

_____

Decided:  October 7, 2020

_____

SARA MCDONOUGH, Alan Lescht and Associates, PC, Washington, DC, for petitioner.

ALISON VICKS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by JEFFREY B. CLARK, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

_____

Before DYK, MOORE, and TARANTO, *Circuit Judges.*

PER CURIAM.

Winsome Messam seeks review of a Merit Systems Protection Board ("Board") decision sustaining her removal from the National Archives and Records Administration ("NARA"). We *affirm*.

## BACKGROUND

Ms. Messam was a federal employee for approximately twelve years. From 2009 to 2018, she worked for NARA as a Financial Management Analyst in the Office of the Chief Financial Officer ("CFO"). NARA is the nation's record keeper and ensures that federal government records are maintained and preserved as required by law. As part of its mission, NARA operates the Federal Record Center Program ("Program"), which provides storage and related services to temporary and pre-archival federal records. The Program operates as a revolving fund and enters into interagency agreements ("IAA") with certain federal agencies, whose records are stored and serviced at record centers throughout the country. Through their IAAs, agencies pay the Program for storage and other services. These funds are used to finance the Program, including the payment of salaries and contractors.

The Program does not receive any direct appropriations from Congress; instead, it receives its funding through the IAAs. The Program, however, is still subject to laws that govern the availability of appropriated funds, such as the Anti-Deficiency Act, 31 U.S.C. § 1341, which require the Program not to incur obligations, costs, or expenditures that exceed its total budget authority. Violations of the Anti-Deficiency Act can result in very serious consequences for an agency and any individual involved, including potential criminal liability.

Ms. Messam was responsible for tracking IAAs for NARA. When she received an IAA or a modification of a

preexisting IAA, she was responsible for updating her personal financial tracking report as well as NARA's report. Ms. Messam would then send the updated NARA report to the Bureau of Fiscal Services ("BFS"), NARA's financial-management shared-services provider. BFS would then enter the information into a financial system. To ensure the accuracy of the information entered, Ms. Messam was also responsible for performing monthly reconciliations, during which she would compare information that was entered into the financial system to what she entered into her personal tracking sheet. If Ms. Messam discovered any differences, she was responsible for flagging and reconciling them. Cherimonda Arrington was Ms. Messam's first-line supervisor and her second-level supervisor was CFO Colleen Murphy.

In 2018, the Internal Revenue Service ("IRS") entered into two IAAs with NARA. The first IAA provided a total of $34 million to the Program to manage the IRS's records and thus created a total budget authority of $34 million (i.e., the IRS would provide a total of $34 million in funding to NARA for NARA to manage the IRS's records). The second provided an additional budgetary authority of $2 million. On January 29, 2018, NARA received a request to obligate $8.25 million of the IRS's $34 million budget authority.[1] Ms. Messam processed the request in March

---

[1] As the Supreme Court noted in *Maine Community Health Options v. United States*, 140 S. Ct. 1308 (2020), "[a]n 'obligation' is a 'definite commitment that creates a legal liability of the government for the payment of goods and services ordered or received, or a legal duty . . . that could mature into a legal liability by virtue of actions on the part of the other party beyond the control of the United States.'" *Id.* at 1319 (quoting GAO, GAO-05-734SP, A Glossary of Terms Used in the Federal Budget Process 70

2018, but rather than obligate $8.25 million of the total budgetary authority, she increased the total budget authority by $8.25 million to $42.5 million.

On March 15, Arthur Hawkins, NARA's account manager for the IRS, advised Ms. Messam that a downward adjustment of $8.25 million was necessary, explaining that the request was to obligate funds, not to increase the total budget authority. He also requested that she ensure that the financial system be updated to reflect the correct budget authority of $34 million. Ms. Messam made the change in the report and sent the update to BFS that same day; however, as of March 28, a quarterly reconciliation identified that the $8.25 million overstatement of budget authority still existed in the financial system and that a downward adjustment was still required. The same day, Ms. Messam's immediate supervisor, Cherimonda Arrington, informed her that the change had not been made in the financial system. Apparently, BFS had failed to process the correction that Ms. Messam had sent earlier that month, and Ms. Messam did not perform a reconciliation any time after she submitted the change to catch the error.

Mr. Hawkins sent Ms. Messam another modification on May 24, 2018. He requested that Ms. Messam obligate $18,873,583.40 toward the IRS's first IAA and increase the overall budget authority from $34 million to $36 million. Rather than obligate the $18,873,583.40 in funds, Ms. Messam again increased the IAA's total budget authority by

---

(2005)); *see also* 2 GAO, Principles of Federal Appropriations Law 7-3 to -4 (3d ed. 2006) ("[I]n very general and simplified terms, an 'obligation' is some action that creates a legal liability or definite commitment on the part of the government, or creates a legal duty that could mature into a legal liability by virtue of an action that is beyond the control of the government.").

this amount.  Ms. Messam thus increased the budget authority from $34 million to over $52 million, resulting in an overstatement of budget authority of approximately $16 million.  At the end of June, BFS alerted Ms. Arrington about an abnormal fund balance.  An analysis of the budget authority revealed Ms. Messam's overstatement of approximately $16 million.  Ms. Arrington discussed the error with Ms. Messam, and Ms. Messam explained that she did not question the $52 million figure because, without verifying her calculations, she only paid attention to the modification and not the new total that the modification outlined.

On August 28, 2018, Ms. Arrington proposed removing Ms. Messam from federal service for negligence and for failure to follow instructions.  The negligence charge included three specifications:  Specifications 1 and 3 concerned Ms. Messam twice exceeding the IRS's IAA budget authority.  Specification 2 pertained to Ms. Messam's use of an incorrect methodology to reach funding levels.  Ms. Messam submitted her response to Ms. Murphy, NARA's CFO and the deciding official, on September 19, 2018, after Ms. Murphy granted Ms. Messam a one-week extension.  After review of the proposed removal and Ms. Messam's response, Ms. Murphy sustained the three specifications under the negligence charge but did not sustain the failure to follow instructions charge.  As a result, NARA removed Ms. Messam from her position effective September 28, 2018.  On October 25, Ms. Messam filed an appeal with the Board.

The Administrative Judge ("AJ") issued a decision on June 10, 2019, affirming the NARA's removal action.  Ms. Messam did not petition the Board for review, and the AJ's decision became the final decision of the Board.  Ms. Messam now seeks review by this court.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must affirm the Board's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Do v. Dep't of Hous. & Urban Dev.*, 913 F.3d 1089, 1093 (Fed. Cir. 2019).  Substantial evidence is "evidence that a reasonable mind may take as sufficient to establish a conclusion." *Grover v. Office of Pers. Mgmt.*, 828 F.3d 1378, 1383 (Fed. Cir. 2016).

On appeal, Ms. Messam argues that the Board's sustaining the charge of negligence was not in accordance with law or supported by substantial evidence.  We agree with the government that substantial evidence supports the Board's conclusion that NARA proved the charge of negligence and that this finding was in accordance with law.

Ms. Messam first argues that the Board applied an incorrect standard for determining negligence.  As we have explained, "[a]n individual is negligent in the performance of his duties if he fails to exercise the degree of care that 'a person of ordinary prudence' with the same experience would exercise in the same situation." *Robinson v. Dep't of Veterans Affs.*, 923 F.3d 1004, 1011 (Fed. Cir. 2019).  The Board applied the correct standard, and we see no error with the Board's legal analysis.

Ms. Messam next argues that the Board's decision sustaining NARA's three negligence specifications was not supported by substantial evidence.  The Board found that Ms. Messam held her position with NARA "for approximately nine years and was expected to perform her duties properly and independently" and that Ms. Messam "was the only employee responsible for processing IAAs and had no responsibilities unrelated to processing IAAs." J.A. 15. The Board noted that Ms. Messam admitted that on two

occasions she submitted reports that resulted in an over-statement of budgetary authority as NARA explained in its removal. The Board also found that Ms. Messam "acknowl-edged using flawed methodology when determining the amounts to include on her [report]." *Id.* The Board ex-plained that "[i]n both instances the overstatements were not identified by [Ms. Messam] or corrected until someone else discovered her error." *Id.* Based on these findings, the Board found that Ms. Messam "failed to exercise the degree of care of a financial analyst and was therefore negligent." *Id.* Substantial evidence supports the Board's decision finding Ms. Messam was negligent.

Ms. Messam additionally argues that NARA's penalty of removal was not in accordance with the law because NARA failed to consider relevant factors and inappropri-ately applied other factors outlined in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305–07 (1981). As we have long held, "[t]he choice of penalty is generally left to agency discretion," *Villela v. Dep't of the Air Force*, 727 F.2d 1574, 1576 (Fed. Cir. 1984), and "[o]ur review of penalty . . . is highly deferential," *Webster v. Dep't of the Army*, 911 F.2d 679, 685 (Fed. Cir. 1990). As a result, we "will not disturb a penalty unless it exceeds the range of permissible pun-ishment or is 'so harsh and unconscionably disproportion-ate to the offense that it amounts to an abuse of discretion.'" *Gonzales v. Def. Logistics Agency*, 772 F.2d 887, 889 (Fed. Cir. 1985) (quoting *Villela*, 727 F.2d at 1576).

The Board reviewed the record evidence and found that there was "no basis to disturb the agency's penalty selec-tion." J.A. 30. We find no error in the Board's conclusion. We cannot say, given Ms. Messam's admitted conduct, that the penalty imposed "exceed[ed] the range of permissible punishment or is 'so harsh and unconscionably dispropor-tionate to the offense that it amounts to an abuse of

discretion.'" *Gonzales*, 772 F.2d at 889 (quoting *Villela*, 727 F.2d at 1576).

Finally, Ms. Messam argues that NARA violated her due process rights. Ms. Messam asserts that the deciding official denied her due process by failing to consider two letters from her colleagues that Ms. Messam claims were relevant to the *Douglas* factor analysis. These letters were submitted after the deadline for submissions had passed. The refusal by the agency to consider her untimely letters was not a due process violation.

Ms. Messam also argues that the agency erred in relying on the revocation of her telework privileges as support for imposing the sanction of removal because she had not received prior notice that this action was relevant. Ms. Messam, however, had first raised the revocation of her telework privilege in her written reply to the proposed removal notice. Considering the revocation of these privileges thus was not a due process violation.

We have considered Ms. Messam's remaining arguments but find them unpersuasive.

### AFFIRMED

COSTS

No Costs.